**In the Matter of John E. THRASHER.**

No. 49S00–9310–DI–1170.

Supreme Court of Indiana.

Feb. 12, 1996.

Kevin P. McGoff, Indianapolis, for respondent.

Donald R. Lundberg, Executive Secretary and Donna McCoy Spear, Staff Attorney, Indianapolis, for the Indiana Supreme Court Disciplinary Commission.

DISCIPLINARY ACTION

PER CURIAM.

On October 26, 1993, the Disciplinary Commission filed a verified complaint for disciplinary action alleging that the respondent violated rules 5.4(c), 1.8(f), 5.5(b), 1.1, 1.4(b), 3.3(a)(1), and 8.4(c) of the *Rules of Profes-*

*sional Conduct for Attorneys at Law.*[1] This case now comes before this Court upon the duly-appointed hearing officer's findings of fact and conclusions of law, in which he concludes that the respondent, John E. Thrasher, engaged in misconduct as charged.

In attorney disciplinary cases, our review is *de novo* in nature, and we remain the final arbiter of misconduct and sanction. *In re Frosch,* 643 N.E.2d 902 (Ind.1994); *In re Lobdell,* 562 N.E.2d 17 (Ind.1990), *In re Stanton,* 492 N.E.2d 1056 (Ind.1986), *clarified at* 504 N.E.2d 1. However, the findings of a hearing officer, being the product of direct observation of witnesses, are given appropriate emphasis. *In re Kern,* 555 N.E.2d 479 (Ind.1990). Where, as here, neither party seeks this Court's review of such findings, we accept and adopt them. *In re Huebner,* 561 N.E.2d 492 (Ind.1990), *In re Young,* 546 N.E.2d 819 (Ind.1989).

Within this review process, we now find that the respondent was admitted to the bar of this state in 1978. In 1991, the respondent regularly accepted referrals of bankruptcy matters from a business management company (the "company") specializing in financial and tax planning. The principal of the company, an accountant, employed no lawyers on his staff. Instead, he regularly referred cases requiring legal service to the respondent and other lawyers. Lawyers receiving referrals from the company then provided legal work necessary to manifest the financial plans formulated by the company for its clients.

One such client sought the assistance of the company in September, 1991. Based on past associations, the company was familiar with the client's general financial situation and knew that he had obtained discharge of his debts in 1990 pursuant to a petition for bankruptcy filed under Chapter 13 of the United States Bankruptcy Code in 1988.[2] On September 18, 1991, the client consulted with the principal of the company regarding his financial situation, who concluded that the client could best resolve his financial problems by again filing a voluntary petition for bankruptcy pursuant to Chapter 13. After the principal gathered the appropriate information from the client to complete a bankruptcy petition, the client signed it at the company's office and paid $120, understanding that part of that amount would go to the respondent. The client never reviewed the petition after initially signing it. The company later referred the matter to the respondent, who was not present during the consultation.[3] After reviewing the client's signed petition for bankruptcy, the respondent signed it as attorney of record and caused it to be filed in United States Bankruptcy Court, Southern District of Indiana, on September 20, 1991, without ever actually having met or consulted with the client. On the petition near the respondent's signature was a declaration that he had explained to the client the relief available under the various provisions of the bankruptcy code. Not mentioned in the petition was the client's 1988 bankruptcy filing. The respondent testified that, because the space on the petition regarding previous bankruptcy filings was blank, he assumed the client had never before filed for bankruptcy. On October 9, 1991, the client signed the bankruptcy schedules and statement of financial affairs and paid the company $200, but still did not consult with the respondent. The company forwarded $200 to the respondent the next day as payment for legal fees. Upon the respondent's motion, the first meeting of creditors was continued from its original December 19, 1991, date. On December 23, 1991, the United States government moved to dismiss the client's petition for bankruptcy on various grounds, including the absence of a plan for payment of priority taxes and the fact that the client was ineligible to seek bankruptcy protection due to his previous Chapter 7 bankruptcy discharge less than six

---

1. The Commission filed an amended complaint on May 20, 1994.

2. Although the client filed under Chapter 13 in 1988, that action was apparently converted to a Chapter 7 bankruptcy prior to the discharge of debts in 1990.

3. At hearing, the respondent testified that he was generally present during clients' consultations with the company.

years before. Prior to the government's motion, the respondent was unaware of the respondent's previous bankruptcy.

On the advice of the respondent, the client moved to dismiss his September 20, 1991, petition for bankruptcy on the theory that such dismissal would avert a dismissal with prejudice on the government's motion. The court granted the client's motion to dismiss on February 6, 1992. On March 16, 1992, the government filed a motion for disgorgement of fees and sanctions against the respondent, requesting therein that he repay the client all fees and expenses for the failed bankruptcy petition. The government thereafter waived sanctions on the condition that he reimburse the client for the costs of the failed petition. At a hearing on June 3, 1992, regarding the sanctions, the respondent admitted that he had never met with the client prior to filing the petition for bankruptcy on September 20, 1991.

Indiana Professional Conduct Rule 5.4(c) provides that a "lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services." The respondent violated that provision by permitting a nonlawyer to conduct the factual and legal analysis underlying the client's bankruptcy, to provide legal advice to the client and to draft the pleading initiating the action in which the respondent eventually appeared as counsel of record. By completely relying on the factual and legal analysis of a nonlawyer, the respondent violated Ind.Professional Conduct Rule 1.1, which provides that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." By appearing as counsel of record in a case wholly developed and prepared by a nonlawyer, the respondent violated Prof. Cond.R. 5.5(b), which prohibits a lawyer from "assist[ing] a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law." The respondent violated Prof.Cond.R. 1.4(b), requiring a lawyer to "explain [matters] to the extent reasonably necessary to permit the client to make informed decisions regarding the representation," by failing to consult with the client prior to or after filing the bankruptcy.

The facts reveal that the company provided the respondent with $200 for his part in the bankruptcy action. We therefore find that he violated Prof.Cond.R. 1.8(f), which prohibits a lawyer from "accept[ing] compensation for representing a client from one other than the client unless ... there is no interference with the independence of professional judgment or with the client-lawyer relationship."[4] By signing the petition as attorney of record and attesting that he had explained to the client the available forms of relief under bankruptcy law when in fact he had not, the respondent violated Prof. Cond.R. 3.3(a)(1) and 8.4(c).[5]

▇▇▇ Having found misconduct, we now determine an appropriate discipline. The hearing officer recommended that the respondent be suspended for at least thirty but not more than ninety days. Although this Court is not bound by the recommendation of the hearing officer,[6] we conclude that a significant period of suspension is warranted. In reaching this conclusion, we examine several factors, including the nature of the misconduct, the duty violated, actual or potential injury flowing from the misconduct, the state of mind of the lawyer, the duty of this Court to preserve the integrity of the profession, the potential risk to the public in permitting the lawyer to continue in practice, and mat-

---

**4.** Professional Conduct Rule 1.8(f) also provides that the client must consent after consultation and information relating to representation of a client must be protected as required by Prof. Cond.R. 1.6. *See* Prof.Cond.R. 1.8(f)(1) and (3).

**5.** Professional Conduct Rule 3.3(a)(1) provides: A lawyer shall not knowingly make a false statement of material fact to a tribunal[.]

Professional Conduct Rule 8.4(c) provides: It is professional misconduct for a lawyer to:

. . . .

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]

**6.** *In re Clanin*, 619 N.E.2d 269 (Ind.1993); *In re Rajan*, 526 N.E.2d 1185 (Ind.1985).

ters in aggravation and mitigation. *In re Pope,* 644 N.E.2d 90 (Ind.1994). The respondent appeared in a case as counsel of record when, in fact, a nonlawyer provided all legal advice to the client, drafted the pleadings, and collected the fee. The respondent's signature on the bankruptcy petition was a complete sham, apparently intended only to serve as the affirmation needed to get the bankruptcy court to accept the pleadings. That the respondent may have intended to actually provide representation to the client at some point after the petition was filed is irrelevant. The risks inherent in arrangements such as this one could not be more clearly illustrated than by the events that later unfolded in this case. The client received incompetent legal representation that threatened complete destruction of his cause of action. The respondent ultimately found himself faced with monetary sanctions and a disciplinary action. The bankruptcy court was needlessly burdened with nonmeritorious pleadings. It is essential to the integrity of any legal practice that lawyers maintain independent professional judgment and not fully abdicate the responsibility of providing legal advice, guidance and expertise to nonlawyers.[7] For the protection of the public and the profession, the privilege of providing legal services to others is entrusted only to those who are duly licensed to practice law. We, therefore, conclude that a significant period of suspension is appropriate to impress upon the respondent and the bar that conduct of this sort will not be tolerated and to protect the public from future transgressions. In this regard, we note that this Court has imposed a ninety day suspension for similar misconduct. *See In re Gillaspy,* 640 N.E.2d 1054 (Ind.1994).

It is, therefore, ordered that the respondent, John E. Thrasher, be suspended from the practice of law for a period of ninety (90) days, beginning March 18, 1996, at the conclusion of which he shall be automatically reinstated.

7. This Court has adopted guidelines in the *Rules of Professional Conduct* which permit lawyers to delegate, to "legal assistants," some professional tasks associated with their practice. *See* Prof.Guideline 9.1 *et seq.* However, such legal assistants must perform the services under the direct supervision and in the employ of a lawyer. Prof.Guideline 9.1. The employing lawyers, of course, are ultimately responsible for the work produced by legal assistants at the lawyers' direction. *Id.*

Costs of this proceeding are assessed against the respondent.