In the Matter of CONTEMPT OF the
Supreme Court of Indiana, Robert
L. DeLONEY, Respondent.

No. 45S00–9704–CO–243.

Supreme Court of Indiana.

Dec. 15, 1997.

Robert L. DeLoney, Gary, Pro Se.

Donald R. Lundberg, Executive Secretary,
Fredrick Rice, Staff Attorney, Indianapolis,
for Indiana Supreme Court Disciplinary
Commission.

PER CURIAM.

The respondent, Robert L. DeLoney, had
been a member of the Bar of this state from
his admission in 1974 until this Court dis-
barred him effective November 5, 1984.
*Matter of Deloney,* 470 N.E.2d 65 (Ind.1984).
On April 10, 1997, the Indiana Supreme
Court Disciplinary Commission filed with
this Court a Verified Information and Motion
for Order to Show Cause Why Respondent
Should Not Be Held in Contempt of Court.
The Commission alleged in two counts that
the respondent held himself out as a lawyer
in violation of this Court's order of disbar-
ment. We granted the Commission's request
and ordered the respondent to appear and
show cause.

On August 12, 1997, at 1:30 p.m., the re-
spondent appeared *pro se,* and the Commis-
sion appeared by staff attorney Fredrick
Rice before Justice Brent E. Dickson and
Justice Frank Sullivan, Jr. Upon conclusion
of the hearing, the presiding Justices report-
ed their findings of fact to the entire Court.
This Court, having considered the evidence
and arguments submitted at hearing and for
the reasons set out below, now finds that the
respondent engaged in the charged conduct
and that he is in contempt of the Supreme
Court of Indiana.

We find that during the times in question,
the respondent was performing some work
for the Charles Graddick Law Office in Gary,
Indiana. The testimony did not present a
precise description of the nature and extent
of the respondent's association with that of-
fice. However, the evidence showed that he
did not receive a regular salary but was paid
on an *ad hoc* basis for doing research, writ-
ing briefs, talking to clients, and other tasks.
The respondent estimated he earned an aver-
age of $10,000 per year through the Graddick
law office.

*Count I.* In 1993, the respondent met a woman in a social setting. The woman testified that the respondent introduced himself to her as an attorney and that she indicated to him that she needed legal advice regarding a child support matter pending in a Lake County trial court. Pursuant to his invitation, she visited him at the Graddick Law Office where they discussed the child support matter. The respondent told her that she could proceed without an attorney and, after this discussion, the client decided to proceed *pro se.* On or about May 20, 1996, the same woman became convinced that she needed the assistance of a lawyer and again met with the respondent at the Graddick Law Offices. During this meeting, she decided to hire the respondent. In response to his request, she paid the respondent $225 retainer fee in two checks. The respondent filled in his own name as the payee and endorsed and negotiated the checks himself. Court hearings were subsequently scheduled in her child support matter.[1]

The respondent testified that he did not introduce himself as a lawyer or ever tell the woman that he was one, although he did not affirmatively advise her he was not an attorney. The woman testified in both direct and cross examination that the respondent introduced and identified himself to her as "attorney Robert DeLoney."

Having weighed the testimony of the witnesses and the documentary evidence of the payment of fees, we are convinced and find that the respondent held himself out as a lawyer and undertook to represent the woman.

*Count II.* The allegations of this count relate to a guardianship proceeding in the LaPorte Superior Court. The LaPorte County Council on Aging (LPCCOA) had been appointed as guardian over an elderly ward. As guardian, LPCCOA was represented by attorney William A. Elliott. Another party with interests that were adverse to those of the guardian was represented by the Graddick Law Office. The court had authorized LPCCOA, as guardian, to sell certain personal property of the ward, and an LPCCOA employee had arranged for an auction.

On March 7, 1996, the respondent called the LPCCOA employee and questioned the legitimacy of the planned auction. The employee, feeling intimidated, canceled a meeting she had scheduled with the auctioneer and sought advice from the guardian's attorney, William Elliott.

The respondent and the employee gave conflicting testimony as to how exactly the respondent had identified himself in the telephone call. The respondent testified that he identified himself as being from attorney Charles Graddick's office; the employee testified that the respondent identified himself as "attorney Robert DeLoney." Undisputed, however, are the facts that the respondent made the telephone call, that the employee was convinced that the caller was an attorney, and that the respondent did nothing to dispel this perception. There was also conflicting testimony over the tone and content of the conversation. However, respondent testified that his principal line of inquiry was whether the auction had been authorized by the court.[2]

Having weighed the testimony of the witnesses, we are convinced and find that the respondent held himself out as a lawyer and undertook to represent the Graddick Law Office's client in this matter.

---

1. After the respondent failed to appear at a hearing scheduled on the matter, the client called the Graddick Law Office, and the respondent advised her that another attorney from that office was at the courthouse and would appear on her behalf. The respondent testified that he had advised the client that he could not appear in court and that someone else will appear for her. She testified that the attorney who was at the courthouse was not familiar with her case.

2. The respondent explained that he was asked by an attorney in the law office to inquire about the pending auction. He contends that contacting the LPCCOA employee is a task any legal assistant is empowered to perform. This argument is misdirected as a lawyer may not request an employee to do that which the lawyer cannot ethically do. Ind.Professional Conduct Rule 5.3(c). This guardian was represented by an attorney, and, pursuant to Prof.Cond.R. 4.2, a lawyer is prohibited from communicating about the subject of the representation with a party the lawyer knows to be represented.

In his defense, the respondent asserts two general propositions: (1) that he did not appear in court and had advised the client in Count I that he could not; and (2) that he performed no more than the sort of tasks that any legal assistant, law clerk, or other law office employee without a license to practice law legitimately may perform.

The practice of law does not only consist of appearing in court and signing one's name to legal documents as a lawyer. Our *Rules of Professional Conduct* and accompanying *Guidelines for Legal Assistants* set forth the specific limits we place upon the services legal assistants may perform. The *Guidelines* specifically prohibit the delegation of the following responsibilities to legal assistants: (a) the responsibility for establishing an attorney-client relationship; (b) the responsibility for establishing the amount of fee to be charged for a legal service; or (c) the responsibility for a legal opinion rendered to a client.[3] The respondent overstepped the bounds of even the permissible functions we allow legal assistants to perform. In fact, he acted independently, identified himself as an attorney, initiated and defined an attorney-client relationship, set a fee and collected it in his own name, and evaluated the client's needs and provided legal advice by advising a client that she could proceed *pro se.* The *Guidelines* also require that a lawyer supervise the work of the assistant and ensure that others are aware that the legal assistant is not licensed to practice law. And the *Guidelines* specifically require that a legal assistant's title "shall be fully disclosed in all business and professional communications." The respondent admits that he never advised those with whom he was dealing that he was not licensed to practice or that he was a disbarred attorney. There was no evidence that he was ever identified to anyone as a legal assistant. There was no evidence that the respondent was in any way supervised. It is amply clear that neither the respondent nor his employers made any effort to advise the unsuspecting public about the respondent's true status.

We cite the *Legal Assistant Guidelines* not to suggest that a suspended or disbarred attorney may function as a legal assistant but rather to make the point that the clear and unambiguous identification of this respondent as a non-lawyer was particularly crucial within the circumstances and setting of his employment. In fact, a fundamental distinction exists between a suspended or disbarred lawyer and a legal assistant or other lay employee of a law office. The former has been adjudicated by this Court to be unfit to represent the interests of others; the latter is presumed fit to do all matters authorized under our rules of professional conduct under the direction and supervision of a member of the bar. A suspended or disbarred lawyer comes before us with a record of impaired professional fitness. *Matter of Gutman,* 599 N.E.2d 604, at 607 (Ind.1992). A suspended or disbarred lawyer who has been disciplined may not continue simply to do "business as usual," keep mum about his or her discipline, and eliminate only those activities such as court appearances and signing of legal documents which might lead to being detected. A suspended or disbarred lawyer bears a heavy responsibility to guard against any misunderstanding about the lawyer's status and has an affirmative obligation to insure that the public understands that he or she is no longer a lawyer.

In light of the foregoing findings and considerations, we conclude in both counts that the respondent engaged in the practice of law in violation of this Court's 1984 order of disbarment. Accordingly, we find that the respondent is guilty of indirect contempt of this Court. This Court has inherent and statutory authority to punish contempt of court by fine and imprisonment. IC 33–2–1–4; *Matter of Curry,* 673 N.E.2d 755 (Ind. 1996); *Matter of Powell,* 658 N.E.2d 572 (Ind.1995); *Matter of Crumpacker,* 431 N.E.2d 91 (Ind.1982). In this case, we find that the respondent's conduct was volitional, contemptuous and ultimately detrimental to the client and the public. We conclude that a period of imprisonment and fine are warranted.

3. Guideline 9.3 of the *Indiana Guidelines for* *Legal Assistants.*

## SENTENCE

IT IS, THEREFORE, ORDERED that the respondent, Robert L. DeLoney, is hereby sentenced to a term of seven (7) days incarceration, which is suspended. IT IS FURTHER ORDERED that the respondent is hereby fined five hundred dollars ($500) and ordered to make restitution of the attorney fees (with interest at the statutory rate) he collected as set out in Count I.

Costs of this proceeding are assessed against the respondent.

SHEPARD, C.J., regards the sanction as too modest but concurs in the interest of unanimity.

DICKSON, SULLIVAN, SELBY and BOEHM, JJ., concur.