**In the Matter of CONTEMPT OF the Supreme Court of Indiana, Marvin Andrew MITTOWER, Respondent.**

No. 49S00–9607–DI–490.

Supreme Court of Indiana.

April 9, 1998.

Kevin P. McGoff, Indianapolis, for respondent.

Donald R. Lundberg, Executive Secretary, Dennis McKinney, Staff Attorney, Indianapolis, for Indiana Supreme Court Disciplinary Commission.

PER CURIAM.

This matter came before this Court on an *Order to Appear and Show Cause* which directed the respondent, Marvin Andrew Mittower, to appear and show cause why he should not be held in contempt of this Court.

Hearing pursuant to the *Order to Appear and Show Cause* was conducted by this Court on March 16, 1998, before Chief Justice Shepard and Justice Sullivan. The Commission, by staff counsel Dennis McKinney, presented evidence as to its *Verified Information and Motion for Order to Show Cause Why Respondent Should not be Held in Contempt of Court.* The respondent appeared in person and by counsel Kevin McGoff. Having considered the evidence submitted at hearing of this matter, we now find as follows: The respondent was admitted to the Bar of this state in 1988. On July 1, 1997, this Court accepted the respondent's resignation from the practice of law in this state in light of a formal complaint for disciplinary action then pending against him. Estate Administrators, Inc., is a business entity that markets "estate planning" materials to the general public.[1] The respondent first became affiliated with the company by renting office space to it. Later, prior to his resignation from the bar, he provided legal services to the company consisting mainly of reviewing legal documents and contracts. After his resignation from the bar, he began to occupy an office at Estate Administrators at 5781 Thunderbird Road in Indianapolis and served as "vice president" and "general counsel" under chief operating officer Perry R. Motolo. Regarding the second title, the respondent and Motolo obtained a letter from the president of Thomas Jefferson University School of Law in Overland Park, Kansas, which concluded that in Indiana, "corporate counsel" is not required to be licensed to "provide legal advice to their employers." The respondent's employment agreement with Estate Administrators, dated July 1, 1997, provided that he would work in the capacity of "general counsel" and "attorney-in-fact." A "Special Power of Attorney," dat-

---

1. In general, Estate Administrators placed ads for "estate planning services" in retiree-oriented publications. Commission salesmen for Estate Administrators would visit prospective customers who called in response to the ads in the customers' homes and offer to "represent the client" in connection with preparation of estate planning documents including wills, trust instruments and powers-of-attorney. Estate Administrators charged a flat fee for these services. The flat fee charged in the single representation with respect to which such evidence was introduced in the show cause hearing was $1,995.

The salesmen disclaimed in writing that they were lawyers. Instead, Estate Administrators contracted with lawyers to prepare the various instruments; these contract lawyers apparently never met with the clients. In this case we are not called upon to decide whether such an arrangement violated the *Rules of Professional Conduct for Attorneys at Law. Cf. Matter of Thrasher,* 661 N.E.2d 546 (Ind.1996).

ed the same day, authorized the respondent to act as "general counsel" and "attorney-in-fact" on behalf of Estate Administrators, Inc. and Motolo "for any all [sic] legal issues which may arise."

On August 19, 1997, an applicant (the "applicant") visited Estate Administrators to meet with the respondent about potential employment with the company. During their meeting, the respondent informed the applicant that he was "general counsel" for Estate Administrators. The applicant noticed that the respondent displayed his Indiana Bar admission certificate on his office wall. The respondent provided him with his business card, which included the word "Esquire" after the respondent's name and indicated that he was "Vice President and General Counsel" of Estate Administrators. The applicant testified that the respondent led him to believe that he was an attorney and did not reveal that he had resigned from the bar.

Detective Sergeant Steve Harris investigates white collar crime for the Indiana State Police. In August of 1997, his superior instructed him to investigate certain allegations made against Estate Administrators. In seeking documents relative to the investigation, Detective Harris visited Estate Administrator's offices on October 7, 1997 and spoke with the respondent, who provided Detective Harris with the documents he sought. The respondent and Detective Harris then spoke briefly about the investigation. Detective Harris stated that he planned to have an attorney look at the documents to ascertain if there was anything "criminally wrong" with them. The respondent then informed Detective Harris that he was an attorney and that the documents were in fact legal. The respondent then provided Detective Harris with a business card that identified the respondent as "Esquire," and "general counsel." At no time did the respondent inform Detective Harris that he was no longer an attorney.

On August 11, 1997, an attorney (the "attorney") wrote to Motolo and the respondent on behalf of individuals who had hired Estate Administrators to prepare a living trust. The attorney informed them that, on behalf of his clients, he sought return of all documents submitted or executed by his clients as well as a refund of $1,995 they had paid for preparation of the living trust. In making the request, the attorney stated that, in his opinion, no fee whatsoever was justified because Estate Administrators effectuated no transfers relative to the trust. Further, he stated that he had advised his clients that they had a possible claim for fraud and theft against Estate Administrators and that, in his opinion, Motolo engaged in the unauthorized practice of law by his activities in marketing the living trust to his clients. By letter dated August 19, 1997, the respondent answered the attorney's letter.[2] The letter was printed on Estate Administrators' letterhead, which identified the respondent as "Marvin A. Mittower, J.D., Vice President, General Counsel." He stated, *inter alia,* that

> Further, the [clients] authorized Estate Administrators to engage my services with regard to their information in preparing the trust and related documents. These facts alone seem to discount the majority of your concerns and contentions....

> I can assure you that the Revocable Living Trust executed by the [clients] will perform as specified ...

> As to your threats of criminal wrongdoing and actionable fraud or theft, such contentions are completely meritless. I must caution you against making these statements to others. Your clients may not be telling you everything or disclosing all of the documents received, but you do have a duty of reasonable investigation.

In October 1997, the attorney, on behalf of his clients, filed a civil claim for damages against the respondent individually, Estate Administrators, and Motolo individually in Noble County Court on the small claims docket. The defendants' "Answer and Affirmative Defenses," filed on November 14, 1997, provided:

---

**2.** The respondent had prepared the documents in question on contract with Estate Administrators prior to his resignation from the bar.

Come now the Defendants, pro se, and for their answer to the Plaintiff's Notice of Claim state the following . . .

The answer was signed by the respondent and Motolo. Similar language appears regarding the defendants' assertion of affirmative defenses and a joint motion for change of venue. No attorney filed a formal appearance on behalf of Motolo or Estate Administrators.

On December 9, 1997, Disciplinary Commission investigator Loyd Heck visited Estate Administrators' offices. While there, he spoke with Estate Administrators' administrative assistant, who handed Heck a photocopy of a page from a Martindale–Hubbell legal directory containing the respondent's professional biography and his areas of law practice. The directory page had been published before the respondent's resignation from the bar while the respondent was a solo practitioner.

█ It is the exclusive province of this Court to regulate professional legal activity. *Matter of Fletcher,* 655 N.E.2d 58 (Ind.1995); *In the Matter of Public Law No. 154–1990 (H.E.A.1044),* 561 N.E.2d 791 (Ind.1990). This Court has original jurisdiction in matters relating to the unauthorized practice of law. Art. 7, Sec. 4, Indiana Constitution, *Fletcher,* 655 N.E.2d 58. It is the province of this Court to determine what acts constitute the practice of law. *Matter of Perrello,* 270 Ind. 390, 386 N.E.2d 174 (1979). The practice of law includes making it one's business to act for, and by the warrant of, others in legal formalities, negotiations, or proceedings. *Fink v. Peden,* 214 Ind. 584, 17 N.E.2d 95 (1938). We find that the respondent engaged in the unauthorized practice of law after this Court accepted his resignation from the bar of this state by his correspondence with the attorney regarding the services Estate Administrators provided to the attorney's clients. The letter reveals that the respondent was acting as an attorney for Estate Administrators by representing its interests in responding to the claims for legal relief alleged by the clients. The respondent responded to the attorney's legal claims on behalf of Estate Administrators and attempted to negotiate with the attorney toward resolution of the proposed legal claims. When the representation later matured into formal legal action, the respondent in effect represented not only his own interests as a party defendant (as he is entitled to do), but also the interests of Motolo and Estate Administrators as well by preparing and causing to be filed the "pro se" pleadings on behalf of all of the defendants in the Noble County Court. As such, he again acted in a representative legal capacity.

█ We find further that the respondent engaged in the unauthorized practice of law by holding himself out to the public as an attorney after this Court accepted his resignation from the bar. The respondent variously labeled himself "esquire," "general counsel," and "attorney-in-fact" on business cards, letterhead, and other documents subject to dissemination among the general public.[3] His administrative assistant provided the Disciplinary Commission's investigator with a Martindale–Hubbell listing which indicated the respondent was an attorney. He displayed his Indiana Bar admission certificate on his office wall. He informed a state police officer that he was an attorney, and at least suggested to the job applicant that he was an attorney. In all, the evidence clearly indicates that the respondent held himself out to the public as an attorney after his resignation. We have stated that a suspended or disbarred lawyer bears a heavy responsibility to guard against any misunderstanding about the lawyer's status and has an affirmative obligation to insure that the public understands that he is no longer a lawyer. *Matter of DeLoney,* 689 N.E.2d 431 (Ind. 1997). Thus, holding oneself out as an attorney when one is not licensed to practice law may constitute the unauthorized practice of law. *See, e.g., DeLoney, supra* (disbarred attorney identified himself as an attorney); *Matter of Lustina,* 683 N.E.2d 236 (Ind.1997) (suspended attorney found to have engaged in the unauthorized practice of law by hold-

**3.** The term "esquire" is a "title commonly appended after [the] name of an attorney." 1 BLACK'S LAW DICTIONARY 489 (5th Ed.1979).

ing himself out as an attorney); *Matter of Anonymous,* 646 N.E.2d 666 (Ind.1995) (suspended attorney found in contempt for signing name and identifying himself as an attorney in a letter to an Ohio court). Here, we find that the respondent engaged in the unauthorized practice of law by holding himself out to the public as an attorney after resigning from the bar.

■ Having found that the respondent engaged in the unauthorized practice of law after his resignation from the bar of this state, we find further that the respondent is guilty of indirect contempt of this Court.

### SENTENCE

■ This Court has inherent and statutory authority to punish contempt of Court by fine and imprisonment. IC 33–2–1–4; *Matter of Powell,* 658 N.E.2d 572 (Ind.1995); *Matter of Crumpacker,* 431 N.E.2d 91 (Ind. 1982). In determining an appropriate punishment, several factors are relevant, among them ascertainment of any continuing risk to the public or profession. The respondent did not actively solicit clients for the purpose of dispensing legal advice and services on an individual basis. Rather, he masqueraded as a lawyer only when it was convenient and advantageous to do so in protecting the interests of Estate Administrators. Additionally, the respondent testified that he believed he could identify himself as "esquire" and "general counsel," even in the absence of a law license, because he held a law degree. He stated that he now recognizes that his actions gave the public the erroneous impression that he was an attorney. Finally, the respondent testified at hearing that he is no longer employed by Estate Administrators.

■ In light of all of the above considerations, we conclude that a fine is sufficient discipline for the respondent's misconduct, given that he did not attempt to continue to practice law in a traditional sense after his resignation and his profession of a current clear understanding of the implications of his resignation. However, if the respondent should continue to hold himself out as an attorney, we would view imprisonment as an appropriate discipline. In this regard, the respondent is admonished to familiarize himself with the duties of suspended, resigned and disbarred lawyers. Ind. Admission and Discipline Rule 23, Section 26(b), effective February 1, 1998. *See also, Matter of DeLoney,* 689 N.E.2d 431.

IT IS, THEREFORE, ORDERED that the respondent be fined the sum of five hundred dollars ($500).

IT IS FURTHER ORDERED that the respondent relinquish his certificate of admission to the Indiana Bar to this Court by delivering it to the Clerk of this Court by May 1, 1998; that he close any client trust account he may still have open by May 1, 1998; and that he cease identifying himself as "esquire," "general counsel," "attorney-in-fact," or any other designation giving the impression that he is a licensed attorney.

The Clerk of this Court shall forward notice of this Order to the Indiana Supreme Court Disciplinary Commission, to the respondent or his attorney; to the West Publishing Company for publication, and to all other entities as provided in Ind. Admission and Discipline Rule 23(3)(d).

Costs of this proceeding are assessed against the respondent.