## FINK ET AL. *v.* PEDEN.

[No. 27,085. Filed October 31, 1938.]

Kane, ·Blain & Hollowell, Jr., and Little, Little & Hoin, for appellants.

Harry Rust, James Ingles, and Henry E. Write, for appellee.

TREMAIN, J.—The appellee recovered judgment against the appellants for services rendered in procuring the settlement of a claim against the Pennsylvania Railroad Company on account of the death of an employee, Ralph Fink, husband of appellant Louise Fink, and father of five minor children, also appellants.

A trial of appellee's claim was had by the court in which special findings of fact were made, in substance as follows:

Ralph Fink, an employee of the Pennsylvania Railroad Company, was killed July 2, 1928, under circumstances that gave rise to a claim against the railroad company. He was survived by a widow and five minor children. Thereafter, in the same month appellee, who had theretofore been a claim agent for the New York Central Railroad Company, and at the time was a claim agent for an insurance company and familiar with presentation of claims of that nature, undertook to negotiate a settlement with the railroad company for and upon behalf of the widow and minor children. He was not an attorney-at-law, and, in the performance of such services, did not pretend to practice law. He was a distant relative of the widow, but his services were not rendered gratuitously. Both he and the widow understood that he was to be paid a reasonable sum for services rendered. He made an investigation of the facts, and, from time to time, negotiated with officials of the railroad company until an agreement was effected, whereby the company agreed to pay to the widow and

children the sum of $7,500 and the further sum of $500 for funeral expenses.

Thereafter, on January 22, 1929, the widow qualified as administratrix of her husband's estate for the sole purpose of settling with the railroad company. She filed a petition in court for authority to make the settlement. Her petition was granted and the settlement was consummated. On February 16, 1929, administratrix filed a final report distributing the amount recovered from the railroad company and showing that the decedent was the owner of no other property. The report was approved and the administratrix was discharged. In the meantime she qualified as guardian of her children and, of the sum collected, paid to herself as guardian $5,000, and retained $2,500 as her individual property. The appellee had no knowledge of these proceedings. The administratrix proceeded under Sec. 6-1407 Burns' Ind. St. 1933, §3212 Baldwin's Ind. St. 1934, and gave no notice of her appointment or her final report. The settlement was made with the railroad company as a result of the efforts of the appellee. The appellee rendered necessary services which were beneficial to the estate and were a proper charge as part of the expense of the administration; that the reasonable value of such services was $1,125; that the widow knew, at the time of her appointment, that the appellee had a just claim against the funds coming into her hands as administratrix, and intentionally refrained from communicating with appellee; that she made distribution to the heirs and did all other acts for the purpose of defrauding appellee.

Upon the facts found the court concluded that the final report should be set aside and the estate reopened, and appellee should recover the sum of $1,125 for services rendered; that the $7,500 should be impressed with an equitable lien in favor of appellee for the amount

due to him, superior to the claim of the widow and children; that appellee should recover from the widow $375 and from the children $750. Judgment was rendered accordingly.

Each defendant excepted to the conclusions of law and filed motions for a *venire de novo* and for a new trial, which were overruled, from which rulings this appeal is perfected.

The court found and the appellee admitted that he was not an attorney at law admitted to practice in this state. In representing the widow in the presentation of the claim to the railroad company for damages on account of her husband's death, the question arises: Did appellee "engage in the business of a practicing lawyer" as defined by Sec. 4-3601 Burns' Ind. St. 1933, §844 Baldwin's Ind. St. 1934? A person who practices law without having been admitted to the bar is guilty of a misdemeanor, Sec. 4-3602 Burns' Ind. St. 1933, §845 Baldwin's Ind. St. 1934. If not duly licensed to practice law, is he entitled to recover in this case?

The practice of law is defined in 7 C. J. S. 703, Section 3(g), as follows:

"The general meaning of the term, 'practice law' or 'practice of law,' is of common knowledge, although the boundaries of its definition may be indefinite as to some transactions. As generally understood, it is the doing or performing of services in a court of justice, in any matter depending therein, throughout its various stages, and in conformity with the adopted rules of procedure; but it is not confined to performing services in an action or proceeding pending in courts of justice, and, in a larger sense, it includes legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are secured, although such matter may or may not be depending in a court. To 'practice law' is to carry on the business of an attorney at law; to do or practice that which an attorney or counselor at law is authorized to do

and practice; to exercise the calling or profession of the law, usually for the purpose of gaining a livelihood, or *at least for gain;* to make it one's business to act for, and by the warrant of, others in legal formalities, *negotiations,* or proceedings." (Court's italics.)

In *Rhode Island Bar Ass'n* v. *Automobile Service Ass'n* (1935), 55 R. I. 122, 179 Atl. 139, 100 A. L. R. 226, annotated, it was held that laymen, acting as a voluntary association, in entering into contracts with others to furnish the services of a lawyer to patrons in connection with matters growing out of the ownership and operation of automobiles, were engaged in the unauthorized practice of law.

The Supreme Court of Minnesota, in the case of *Fitchette* v. *Taylor* (1934), 191 Minn. 582, 254 N. W. 910, 94 A. L. R. 356, held that an injunction would lie to prevent the practice of law by laymen. The defendant was enjoined from:

" '(a) Furnishing opinion as to the right to maintain an action against others. (b) Drawing contracts, releases and affidavits for others. (c) Furnishing legal services or advice to others. (d) Soliciting, settling or adjusting personal injury claims or otherwise engaging in the practice of law.' "

The county bar association was the plaintiff in that case, and charged that the defendant and others associated with him were not members of the bar, but solicited, advertised for, and held themselves out as being engaged in the business of adjusting and settling claims for personal injuries and collecting damages therefor. They interviewed witnesses and secured statements relative to the claims which they purported to handle in order to enable them to give legal advice and opinion as to the collectibility thereof, and in order to enable the defendants to discuss, advocate, and argue the legal rights and liabilities in the course of presenting the

claims and negotiating the settlements. The defendants performed this labor for hire.

The court held that such services were as much the practice of law as the conduct of litigation in court. When one undertakes to give counsel as to legal status or rights in respect to a pending claim, he is performing a special function reserved for attorneys at law, as much as diagnosis, prognosis, and prescription are within the special field of medicine. The court said whatever definition may be given to the practice of the law, "it is enough that, under any permissible definition, the subject of this injunction was the practice of law by a layman and so unlawful."

In *Eley* v. *Miller* (1893), 7 Ind. App. 529, 34 N. E. 836, at page 535, the Appellate Court of this state had occasion to define the practice of law by the use of the following language:

"As the term is generally understood, the practice of the law is the doing or performing services in a court of justice, in any matter depending therein, throughout its various stages, and in conformity to the adopted rules of procedure. But in a larger sense it includes legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are secured, although such matter may or may not be depending in a court."

In *Harris* v. *Clark* (1924), 81 Ind. App. 494, 142 N. E. 881, it was held that a person who was not duly admitted to practice law in this state, in conformity to the provisions of the statute, could not recover for legal services rendered.

*In re Opinion of the Justices* (1935), 289 Mass. 607, 194 N. E. 313, the Legislature of the State of Massachusetts submitted certain questions to the Supreme Court of that state relating to a proposed bill to be presented to the Legislature, relative to the practice of the law, admission to the bar, and the control of those

engaged in such business. In discussing this question the court said (p. 612):

"So far as the practice of the law relates to the performance of the functions of an attorney or counsellor at law before the courts, it comprises mastery of the facts and law constituting the cause of action or legal proceeding of whatever nature, the preparation of pleadings, process, and other papers incident to such action or proceeding, and the management and trial of the action or proceeding on behalf of clients before judicial tribunals. . . . The practice of the law is personal. It is open only to individuals proved to the satisfaction of the court to possess sufficient general knowledge and adequate special qualifications as to learning in the law and to be of good moral character. . . . A dual trust is imposed on attorneys at law: they must act with all good fidelity both to the courts and to their clients. They are bound by canons of ethics which have been the growth of long experience and which are enforced by the courts. *Matter of Cohen,* 261 Mass. 484, 159 N. E. 495, 55 A. L. R. 309. . . .

"Practice of law under modern conditions consists in no small part of work performed outside of any court and having no immediate relation to proceedings in court. It embraces conveyancing, the giving of legal advice on a large variety of subjects, and the preparation and execution of legal instruments covering an extensive field of business and trust relations and other affairs. Although these transactions may have no direct connection with court proceedings, they are always subject to become involved in litigation. They require in many aspects a high degree of legal skill, a wide experience with men and affairs, and great capacity for adaptation to difficult and complex situations. These 'customary functions of an attorney or counsellor at law' . . . bear an intimate relation to the administration of justice by the courts. No valid distinction, so far as concerns the questions set forth in the order, can be drawn between that part of the work of the lawyer which involves appearance in court and that part which involves advice and drafting of instruments in his office. The work of the office lawyer is the groundwork for future pos-

sible contests in courts. . . . The underlying reasons which prevent corporations, associations and individuals other than members of the bar from appearing before the courts apply with equal force to the performance of these customary functions of attorneys and counsellors at law outside of courts."

The court held that it was within the power of the Legislature, in conjunction with the court, to prescribe rules and regulations which prevent persons from practicing law who are not fully admitted as members of the bar.

In addition to the statutes above referred to defining the practice of law and prescribing penalties for one to engage in the practice who was not admitted to the bar, the Supreme Court of this state has adopted rules in conformity to the statute which require all applicants for admission to submit to a written examination conducted by the State Board of Law Examiners. Before one is permitted to take the examination he must establish that he has the educational qualifications as well as a good moral character. When one has passed successfully the bar examination, he is then admitted by the Supreme Court to practice law in all of the courts of this state.

As found by the court, the appellee in the case at bar is not an attorney. In addition to the special findings of the court, the appellee testified, as set out in appellant's brief, as follows:

"I was not a member of the Bar of the State at that time and did not become a member of the Bar at any time during the matter involved in this litigation. . . I told Mrs. Fink if she wanted an attorney, now was the time to get one. . . . It looked as if I would have a good deal of work to get it settled. We were going to have negotiations. I already knew what the evidence in the case was. The work to be done consisted of settling the case. When I had the conversation with Mr. Miller (claim agent for the Pennsylvania Railroad Company), I discussed

the liability for the accident, the fact that the motor car had derailed and that if the case got into litigation it would be alleged it was a defective motor car. That it was interstate commerce, the pecuniary loss, the fact that there were quite a lot of children would have a great influence on a jury and that an amicable settlement was better financially than long drawn out litigation. The Federal Employer's Act was discussed only to the extent of determining whether it was interstate or intrastate. We discussed the proposition of whether or not this accident was interstate or intrastate. . . . I discussed with Mr. Miller why he should make a substantial settlement. I submitted decisions and authorities to Mr. Miller or called them to his attention, which would be persuasive to him that the accident did come under interstate commerce. He was as familiar with that as I was. At that time I was familiar with the law as relating to accidents or injuries under the Federal authorities. I think it was due to my knowledge of the law that I was able to talk to Mr. Miller intelligently about this matter."

Wherever the question now before this court has been presented to courts in other jurisdictions it has been held that a person purporting to act as an attorney, but who in fact is not a licensed attorney, cannot recover for services rendered. A case almost identical to the one at bar is *Meunier* v. *Bernich* (1936), (La. App.), 170 So. 567. In that case Meunier held himself out as a claim agent. A minor child of Bernich was killed by a dynamite torch under circumstances which gave rise to a claim for damages. Meunier entered into a contract with the parents of the child to present claim and to effect a compromise for which he was to receive 33⅓ per cent. The contract was reduced to writing and signed by the parties, and, among other recitals, states that Meunier specially held out to Mr. and Mrs. Bernich "that he is no lawyer, and is not to in any way engage in the practice of law in the performance of said duties." A settlement was effected, whereby the parents received

$7,500, but refused to pay Meunier for services rendered. He sued upon the contract. In the trial it became a vital question as to whether he was engaged in the practice of law in effecting the settlement, and, if not admitted to the bar, whether he was entitled to recover upon his contract. The court held that he was engaged in the practice of the law and that he was not entitled to recover upon the contract.

The law of that state concerning the admission to the bar and the control of attorneys is similar to the law of this state. The Louisiana court discussed the statutes and the power of the Legislature to enact laws upon the subject of the regulation of the practice of the law, and the inherent power vested in the court to control and regulate the activities of persons engaged in practicing law. The court defined the practice of the law by quoting the definition given by Ballentine's Law Dictionary, and as defined by a number of court decisions, among them being *In re Duncan* (1909), 83 S. C. 186, 65 S. E. 210, 211, 24 L. R. A. (N. S.) 750, 18 Ann. Cas. 657; *Boykin* v. *Hopkins* (1932), 174 Ga. 511, 162 S. E. 796, 799; *People* v. *Title Guarantee & Trust Co.* (1917), 180 App. Div. 648, 168 N. Y. S. 278, 280.

Pursuant to the definition given by these authorities and others which could be cited, a person who gives legal advice to clients and transacts business for them in matters connected with the law in the settlement, adjustment, and compromise of claims is engaged in the practice of law. The Louisiana court then proceeded to say (p. 569):

> "A person holding himself out to the public as being learned in the law must have a keen knowledge, derived through study and experience, of all three branches of government (viz., Legislative, Executive and Judicial). He should know how the laws are made, how they are administered, and should be able to counsel and advise the unin-

formed respecting the effect, interpretation, and construction of laws as laid down by the courts in the jurisprudence. Therefore, 'one who practices law' may be defined to be a person who, by reason of attainments previously acquired through education and study, has been recognized by the courts of justice as possessing profound knowledge of legal science entitling him as such to advise, counsel with, protect, prosecute, or defend the rights, claims, or liabilities of his clients in respect to the construction, interpretation, and the operation and effect of law. It is for this reason that the Supreme Court, aided by statute, has found it essential, for the protection of the general public, to prescribe certain minimum educational requirements for all applicants seeking admission to the bar. In addition to the educational standards prescribed, the court has provided, by rule 15, that the applicants for admission to practice pass a final test not only as to their learning but the court demands that the applicants be possessed of good morals and high character. The quality of integrity in the applicant to become a member of the bar is obviously one of extreme importance inasmuch as the lawyer occupies not only a position of trust but becomes an officer of the court. His conduct in relation to his dealing with clients is subjected to close scrutiny by the other members of his profession and by the court itself and canons of ethics have been formulated as a guide to him in the pursuit of his profession. Furthermore, the right to practice law is not a privilege or immunity granted to all citizens of the United States. See *In re Lockwood,* 154 U. S. 116, 14 S. Ct. 1082, 38 L. Ed. 929. But it is a franchise from the state conferred only for merit and is not a lawful business except for members of the bar who have complied with all the conditions required by statute and the rules of the court. See *State* v. *Rosborough,* 152 La. 945, 94 So. 858.''

After a lengthy discussion of what constitutes the practice of the law and the control of lawyers, their duties to their clients and to the courts, that court then turned to the activities of the claim agent, Meunier, and recited his acts and conduct in the adjustment of the

claim for the death of the child, which the court summed up by the use of the following language (p. 571) :

"He undertook, by contract, to enforce, secure, settle, adjust, or compromise whatever claim the Bernichs had arising out of the fatal accident. In this employment, it became necessary for him to examine the facts of the case, and to advise the Bernichs regarding the liability of the New Orleans Terminal Company in damages for the death of their child. Not only did he advise the defendants that liability existed, but he made a lawyer's demand on the railroad company, informing that responsibility had attached to it for the negligent killing of the little girl.

"Thus, in the performance of his contract, Meunier had to advise his client concerning the redress of a legal wrong, which advice he was not qualified to impart, because he does not possess the legal training exacted by the Supreme Court. By contracting to advise the defendants, Meunier attempted to function and perform the duties of a duly licensed attorney. He not only usurped the functions of a lawyer in this particular case, but he readily admits, on the witness stand, that in the adjustment of claims he advises clients respecting their rights and liabilities as a matter of law. In other words, he is engaged in the business of settling and adjusting personal injury claims, and it is well established that the doing of these acts constitutes the practice of law."

The right to recover was denied. All that has been said in the Meunier Case applies with equal force to the appellee in the case at bar. According to the special findings of fact and appellee's testimony he did exactly what Meunier did in the Louisiana case. The appellee has not shown any legal right to recover of the appellants for services performed in the instant case.

Also, the court erred in setting aside the report of the administratrix. It was not necessary for her to qualify as administratrix in order to make the settlement, since the settlement made was by agreement. She could have executed a binding

release to the railroad company for the amount due to her as widow. The guardian of the children could have released for them upon the approval of the court having jurisdiction of the guardianship. *Pittsburgh, etc., R. Co.* v. *Gipe* (1903), 160 Ind. 360, 65 N. E. 1034; *Mesker* v. *Bishop* (1914), 56 Ind. App. 455, 471, 103 N. E. 492, 105 N. E. 644.

The funds obtained were no part of decedent's estate. They belonged to the widow and children. Sec. 2-404 Burns' Ind. St. 1933, §51 Baldwin's 1934; *Lake Erie, etc., R. Co.* v. *Charman* (1903), 161 Ind. 95, 109, 67 N. E. 923.

Ralph Fink's estate had no interest whatever in the sum paid by the railroad company to his widow and the minor children. Therefore, it follows that appellee was not a "person interested in the estate" within the meaning of Sec. 6-1424 Burns' Ind. St. 1933, §3220 Baldwin's 1934. Being without an interest in the decedent's estate, he possessed no right or authority to maintain an action to set aside the final report, and, of course, possessed no equitable lien against the fund collected. For the reasons pointed out above, the court erred in its conclusions of law.

Other questions of minor importance are presented by appellant's brief. In view of the conclusion reached by the court, it becomes unnecessary to discuss them. Therefore, the judgment is reversed with direction to the trial court to restate its conclusions of law in accordance herewith, and to render judgment in favor of appellants.