ATTORNEYS FOR RELATOR
Wilford A. Hahn
Huntington, Indiana

Jeffrey B. Kolb
Vincennes, Indiana

ATTORNEY FOR RESPONDENT NORTHOUSE
Kevin McGoff
Indianapolis, Indiana

ATTORNEY FOR RESPONDENT RAMER
Robert E. Kabisch
Fort Wayne, Indiana

_____

# In the
# Indiana Supreme Court

_____

No. 94S00-0505-MS-205

STATE OF INDIANA EX REL. INDIANA STATE BAR ASSOCIATION,

*Relator*,

v.

GARY L. NORTHOUSE AND MICHAEL E. RAMER,

*Respondents*.

_____

On Petition To Enjoin The Unauthorized Practice Of Law
_____

**June 6, 2006**

**Per Curiam.**

This is an original action brought by the Indiana State Bar Association ("Relator") in the name of the State of Indiana pursuant to Indiana Admission and Discipline Rule 24.[1] Relator seeks an order enjoining Respondents Gary L. Northouse ("Northouse") and Michael E. Ramer ("Ramer") from the unauthorized practice of law. This Court has

_____

[1] Rule 24 states, in part: "Original actions . . . to restrain or enjoin the unauthorized practice of law in this state may be brought in this court by the attorney general . . . the Indiana State Bar Association or any duly authorized committee thereof, without leave of court . . . ."

original jurisdiction over matters involving the unauthorized practice of law. See IND. CONST. art. 7, § 4. The Court finds Northouse and Ramer have engaged in the unauthorized practice of law and concludes an injunction is appropriate and necessary.

## Procedural Background

On May 2, 2005, Relator filed a verified petition alleging that Northouse and Ramer engaged in the unauthorized practice of law. Specifically, the petition alleged Northouse engaged in the unauthorized practice of law when he: (1) not being admitted to practice law in Indiana or any other state, consulted with one of his insurance clients and provided legal advice regarding the client's need for a will, a living trust, and a power of attorney; (2) directed Ramer to prepare such legal documents for the client; (3) obtained the client's signature on those documents without having them reviewed or approved by an attorney; and (4) had other clients sign similar documents. The petition alleged Ramer engaged in the unauthorized practice of law when he, not being admitted to practice law in Indiana, prepared the aforementioned documents for Northouse's clients, among other things. The petition asks for an injunction permanently prohibiting Northouse and Ramer from engaging in the unauthorized practice of law in Indiana and for all other appropriate relief.

Northouse and Ramer each filed a verified return to the petition. The returns admitted many of the petition's factual allegations but denied others. The Court appointed the Honorable James E. Harris, retired Judge of the Morgan Circuit Court, to serve as Commissioner to hear the evidence and provide the Court with findings of fact. After receiving stipulations from the parties, the Commissioner filed his findings of fact, which we approve and adopt. The Court then received legal briefs from the Relator, Northouse, and Ramer.

## Findings Of Fact

Northouse is a registered securities representative and an insurance agent who operates an Indiana business, Northouse Insurance and Financial Services, Inc. Northouse is not admitted to practice law in Indiana or any other state. Ramer is the president of Security Trust Corporation ("STC"), which is located in Fort Wayne, Indiana. Ramer is not an attorney and is not admitted to practice law in Indiana or anywhere else. Ramer contacted Northouse in 2000 about selling trusts through STC. Ramer represented that an attorney would be involved in preparing the trust documents. Between 2000 and 2002, Northouse sold a total of eight "Financial Organization" books that included trust documents prepared by STC. Northouse sold the last such book in December 2002.

D.D., an eighty-nine year old who lived in an independent retirement facility in Huntington, Indiana, purchased one of those books. Previously, D.D. had worked with her attorney, David L. Brewer, to plan her estate. As part of that planning, D.D. signed a power of attorney in 1995 making Brewer her health care representative. In 1999, she signed a living will, and in 2000, she executed a will that had been drafted by Brewer and which made Brewer the personal representative of her estate upon her death.

Beginning in 1975, Northouse served as D.D.'s insurance agent. In 1995, Northouse began handling her investments, too. Although D.D. was satisfied with her estate planning, Northouse met with D.D. sometime prior to the end of April 2002 at D.D.'s residence, reviewed her will, and discussed her estate plan and the benefits of a living trust. On or about April 30, 2002, Northouse again met with D.D. at her residence, collected information concerning her estate plan, and discussed with her the creation of a living trust, a power of attorney, and a will with provisions consistent with those in her 2000 will. Northouse told D.D. that because such a trust would be revocable, she could make changes to it as often as she believed necessary. D.D. then gave Northouse a check for $1,295 made payable to STC.

3

On May 1, 2002, Northouse gave Ramer D.D.'s check, along with information regarding D.D.'s desired estate plan to allow Ramer to prepare a will, a living trust, a power of attorney, and other documents for D.D. Then, beginning with forms that had been created by an attorney, Ramer or his staff prepared documents specifically for execution by D.D. Although Northouse made certain decisions on D.D.'s behalf regarding which provisions of the "form" documents needed to be modified to suit D.D.'s personal wishes relating to the disposition of her property upon her death, those modifications were never actually incorporated into the documents prepared for D.D. Ramer did not have any of the documents prepared for D.D. reviewed by an attorney once they were completed.

On May 3, 2002, Northouse returned to D.D.'s residence with a loose-leaf "Financial Organization" book. Northouse met with D.D. alone and obtained D.D.'s signatures on several documents in the book, including: (1) a will that appointed Northouse as personal representative; (2) a revocable living trust appointing Northouse as successor trustee; and (3) a power of attorney/appointment of healthcare representative appointing Northouse as her attorney-in-fact and as her healthcare representative and revoking all previous powers of attorney. The will and trust that Northouse had D.D. sign did not include any dispositive provision or designate the desired beneficiary of her property upon her death. The will simply gave the "residue" of her estate to the trustee for distribution under the trust, but the trust itself did not include any instructions regarding how property was to be distributed after her death. The provisions of the trust were not consistent with the provision of the will she had executed in 2000. Northouse then left with the book.

Later that day, Ramer notarized the trust, will, and power of attorney documents that were in the book and had been signed by D.D. On the same day, at the STC office, Cristina J. Ramer and Stephen W. Foster signed as "witnesses" to the execution of D.D.'s will even though they were not present at D.D.'s residence when she signed it.

4

D.D. did not see the documents in the book again until Northouse provided them to her in March or early April 2003. After realizing what she had signed and that those documents would not dispose of her property as she wished, D.D. became upset. She later met with Brewer and requested his help in revoking the appointments of Northouse in the various documents and to correct the dispositive provisions in the will and trust.

Northouse and Ramer now represent that they have no intention of selling such documents in the future or giving what may be construed as legal advice regarding estate planning in the future.

**Unauthorized Practice Of Law**

This Court's authority to set standards for and supervise the practice of law emanates from the need to protect the public from those who are not properly licensed or otherwise qualified to act as attorneys. See State ex rel. Disciplinary Comm'n v. Owen, 486 N.E.2d 1012, 1014 (Ind. 1986). It is the province of this Court to determine what acts constitute the practice of law. In re Mittower, 693 N.E.2d 555, 558 (Ind. 1998). This Court has not attempted to provide a comprehensive definition of what constitutes the practice of law because of the infinite variety of fact situations. See Miller v. Vance, 463 N.E.2d 250, 251 (Ind. 1984). Nevertheless,

> [t]he core element of practicing law is the giving of legal advice to a client and the placing of oneself in the very sensitive relationship wherein the confidence of the client, and the management of his affairs, is left totally in the hands of the attorney. The undertaking to minister to the legal problems of another creates an attorney-client relationship without regard to whether the services are actually performed by the one so undertaking the responsibility or are delegated or subcontracted to another.

In re Perrello, 270 Ind. 390, 398, 386 N.E.2d 174, 179 (1979).

Preparing and drafting a will and giving advice as to the contents and legal effect of a will constitute the practice of law. State ex rel. Pearson v. Gould, 437 N.E.2d 41, 42 (Ind. 1982); State ex rel. Indiana State Bar Ass'n v. Osborne, 241 Ind. 375, 172 N.E.2d

5

434, 435 (1961). Similarly, it has been held that persons engage in the practice of law when they advise others regarding the legal consequences of specific decisions relating to the creation of living trusts and powers of attorney and prepare such documents for others. See, e.g., People v. Cassidy, 884 P.2d 309, 311 (Colo. 1994); Comm. on Prof'l Ethics & Conduct of the Iowa State Bar Ass'n v. Baker, 492 N.W.2d 695, 703 (Iowa 1992); In re Mid-America Living Trust Assocs., Inc., 927 S.W.2d 855, 860-61 (Mo. 1996); Cleveland Bar Ass'n. v. Sharp Estate Servs., Inc., 837 N.E.2d 1183, 1186 (Ohio 2005); Dayton Bar Ass'n v. Addison, 837 N.E.2d 367, 369 (Ohio 2005); In re Deddish, 557 S.E.2d 655, 656 (S.C. 2001).

The fact that attorney-drafted forms were used as the starting point for the documents D.D. signed does not insulate Northouse or Ramer from the charge of unauthorized practice of law. On at least three occasions, this Court has addressed whether the filling out of documents with legal ramifications constitutes the practice of law. In State ex rel. Indiana State Bar Association v. Indiana Real Estate Association, the Court stated:

> Generally, it can be said that the filling in of blanks in legal instruments, prepared by attorneys, which require only the use of common knowledge regarding the information to be inserted in said blanks, and general knowledge regarding the legal consequences involved, does not constitute the practice of law. However, when the filling in of such blanks involves considerations of significant legal refinement, or the legal consequences of the act are of great significance to the parties involved, such practice may be restricted to members of the legal profession.

244 Ind. 214, 220, 191 N.E.2d 711, 715 (1963). The Court held the execution of deeds is restricted to attorneys but real estate brokers and salespersons may fill in the forms of other legal instruments prepared by attorneys, including listing agreements, offers to purchase, purchase agreements, and short form leases. See id. at 226, 191 N.E.2d at 717.

This Court later considered whether the preparation of a mortgage instrument by a bank employee who was not an attorney constituted the unauthorized practice of law in Miller v. Vance, 463 N.E.2d at 251. This Court reasoned that a bank employee

6

performing "the routine service of filling in information on standard real estate mortgage forms . . . incidental to and directly connected with the bank's regular business of making loans" did not constitute the practice of law. Id. at 252. However, the Court cautioned:

> [T]here are certain limitations which apply to bank employees similar to those placed upon real estate brokers. . . . The lay bank employee may not give advice or opinions as to the legal effects of the instruments he prepares or the legal rights of the parties.

Id. at 253. Thus, in both Indiana Real Estate and Miller, the Court permitted non-lawyers to fill out legal forms in situations in which the chance for legal error was low. The forms were used in routine transactions in the course of the jobs for which the non-lawyers were trained in Miller and for which the non-lawyers were both trained and licensed in Indiana Real Estate, and the forms were prepared by lawyers for use in such transactions.

By contrast, an injunction preventing the unauthorized practice of law was issued in State ex rel. Indiana State Bar Association v. Diaz, 838 N.E.2d 433 (Ind. 2005), where Diaz, a non-attorney, was performing immigration-related services that "went far beyond the use of forms." Id. at 445. Diaz's services included advising her clients on many aspects of immigration law, including which forms to use and what information to provide in the blanks, writing motions and appeals to immigration officials on behalf of clients, and accompanying her clients to the immigration office. Id. Immigration services cannot be considered routine transactions, the Court reasoned, because each case is unique and the procedures can be complex. Id. Further, the Court added, "Incompetence in the complexities of immigration law can have disastrous results because filing the wrong document, missing a deadline, or misjudging the relief available to a client can mean the difference between legal status and deportation[.]" Id. at 446.

Drafting and preparing testamentary and trust documents is clearly the practice of law. Northouse and Ramer crossed the line of permissible non-lawyer services and engaged in the unauthorized practice of law, as alleged in the petition. Indeed, the briefs filed by Northouse and Ramer do not deny that they engaged in the unauthorized practice

of law. Instead, they take the position that this Court need not address that issue because this case is moot and, even if the case is not moot, an injunction is not proper.

## Should Relief Be Granted?

A case is moot when no effective relief can be rendered to the parties before the court. In re Lawrance, 579 N.E.2d 32, 37 (Ind. 1991). Northouse and Ramer insist this Court should dismiss this proceeding for injunctive relief because their conduct in question ended in December 2002 and they both represent they do not intend to sell such documents or give what may be construed as legal advice regarding estate planning in the future. For similar reasons, they argue that even if this case is not moot, the Court should exercise its discretion not to issue an injunction under these circumstances. They cite United States v. W.T. Grant Co., 345 U.S. 629 (1953), which upheld a district court's exercise of discretion in denying an injunction to prevent interlocking corporate directorates where each defendant engaged in no more than one alleged violation of law, the violations ceased after the filing of the lawsuit, and no threatened future violations were alleged.

This proceeding is not moot, and an injunction should be issued.[2] Under appropriate circumstances, mootness may warrant dismissal of an action to enjoin the unauthorized practice of law. See State ex rel. Steers v. Meyer, 249 Ind. 493, 233 N.E.2d 242 (1968) (noting the respondent moved to dismiss the proceeding as moot and the Attorney General and Indiana State Bar Association agreed). No such agreement exists here. Moreover, the respondents' representations—made after the institution of this original action—that they do not intend to engage in unauthorized practice of law in the future does not render this proceeding moot. See W.T. Grant, 345 U.S. at 897 (noting "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot[,]" in part, because "the

---

[2] The Relator argues, in part, that even if this case is moot, this Court should address the issue under an exception to the mootness doctrine that allows an appellate court to address an issue, though moot, if it is a matter of great public importance and may be repeated. See Horseman v. Keller, 841 N.E.2d 164, 170 (Ind. 2006). Because this case is not moot, we need not address whether this case would qualify for that exception.

defendant is free to return to his old ways"). Given that Northouse and Ramer's conduct was not isolated but involved the sale of eight "Financial Organization" books over the course of several years, an injunction is warranted. Accord Owen, 486 N.E.2d at 1014 (granting injunction prohibiting non-lawyer legal researcher from engaging in unauthorized practice law despite his apology for any misunderstanding and his agreement not to practice law by giving legal advice).

We pause to consider the type of relief available in this proceeding. The purpose of a proceeding under Admission and Discipline Rule 24 is not to find fault or assess liability but to protect the public from those not properly licensed or otherwise qualified to act as attorneys. State ex rel. Disciplinary Comm'n v. Crofts, 500 N.E.2d 753, 756 (Ind. 1986). Although the rule uses the terms "enjoin" and "injunction" when referring to the relief available and "injunctions typically order those to whom they are directed to refrain from doing something, the relief afforded by equity may be extended to compel affirmative action when necessary." Ferrell v. Dunescape Beach Club Condos. Phase I, Inc., 751 N.E.2d 702, 713 (Ind. Ct. App. 2001); see 16 I.L.E. Injunction § 1 (1999) ("An injunction is a formal command of the court, directing the person named therein to refrain from doing certain specified acts . . . or, where the relief is mandatory in form, directing such persons to take certain steps to undo the wrong or injury with which they are charged.").

In addition to being prohibited from engaging in future acts of unauthorized practice of law, Northouse and Ramer should be prohibited from retaining the fees that they have collected from the sale of the eight "Financial Organization" books containing trusts prepared by STC; in other words, they should refund those fees (if they have not already done so) to those who purchased the books.[3] Such refunds are appropriate to deter similar conduct in the future and, ultimately, to protect the public. "A review of the fees charged in various cases indicates that trust marketers have much to gain by advising

---

[3] In an analogous setting, our appellate courts have long held that a plaintiff who was not admitted to practice law may not, as a plaintiff, recover a fee for rendering legal services. See Fink v. Penden, 214 Ind. 584, 17 N.E.2d 95 (1938); Harris v. Clark, 81 Ind. App. 494, 142 N.E. 881 (1924).

9

their clients to purchase living trust documents." In re Mid-America, 927 S.W.2d at 863 (reviewing fees typically charged for preparation of trust documents). It would send a much less effective message if this Court were to prohibit non-lawyers from engaging in future acts of unauthorized practice of law but, in effect, allow them to retain fees for unauthorized legal services that they have already collected.

Finally, we stress that the availability of injunctive relief under Admission and Discipline Rule 24 does not preclude, and should not discourage, the State from filing criminal charges in appropriate cases against those who violate the prohibition on the unauthorized practice of law. See Levy v. State, 799 N.E.2d 71 (Ind. Ct. App. 2003), trans. denied. "A person who: (1) professes to be a practicing attorney; (2) conducts the trial of a case in a court in Indiana; or (3) engages in the business of a practicing lawyer; without first having been admitted as an attorney by the supreme court commits a Class B misdemeanor." Ind. Code § 33-43-2-1 (2004).

## Conclusion, Injunction, and Costs

The evidence establishes that Northouse and Ramer have engaged in the unauthorized practice of law. Northouse and Ramer are ORDERED not to engage in acts that would constitute the unauthorized practice of law, including, but not limited to, advising others regarding the effect and/or appropriateness of a particular will, trust, or power of attorney, and preparing such documents for execution by others. This injunction does not prevent Northouse and Ramer from performing non-legal services for their clients.

Additionally, Northouse and Ramer are ORDERED to: (1) return the fees they collected for the unauthorized legal services in connection with the sale of the "Financial Organization" books mentioned in this opinion; and (2) provide a copy of this opinion to the purchaser of each such book. Within thirty days of the date of this opinion, counsel for Northouse and Ramer are ORDERED to file with this Court verified statements detailing how their respective clients have complied with the requirements in this

10

paragraph. Those statements should include, at a minimum, identification (including name, address, and telephone number) of the purchasers to whom refunds and copies of this opinion have been provided and a specification of the amount of the refund.

The requirement that Northouse and Ramer provide the purchasers with a copy of this opinion is intended to allow each purchaser an occasion to consider whether to consult with a duly licensed lawyer of his or her choice to assess whether the documents sold as part of the book are suitable and appropriate for that purchaser.

The costs of the hearing in this matter are assessed against Northouse and Ramer and will be fixed by a separate order.

SHEPARD, C.J., and DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.

11