# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**TIMOTHY J. O'CONNOR**
O'Connor & Auersch
Indianapolis, Indiana



FILED

Dec 19 2014, 8:55 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ERICA N. DUMES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1404-CR-170 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Amy J. Barbar, Magistrate
Cause No. 49G02-1303-FC-15440

**December 19, 2014**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Erica N. Dumes appeals her convictions for forgery as a class C felony and unauthorized practice of law as a class B misdemeanor. Dumes raises two issues which we revise and restate as whether the evidence is sufficient to sustain her convictions. We affirm.

FACTS AND PROCEDURAL HISTORY

Sometime in 2012, Teresa Rogers and her husband decided to divorce. Teresa reached out to her daughter for help and subsequently called Dumes. She talked to Dumes on the phone two or three times. Dumes told Teresa that she was going to file the paperwork for her and that there was a fee that Teresa had to pay. Dumes met Teresa, and Teresa signed papers from Dumes and gave her "two fifty or two twenty five" dollars. Transcript at 43.

In May 2012, Dumes entered the Marion County Clerk's office and told Karla Rangel, an employee at the Marion County Clerk's office, that she wanted to file paperwork including a document titled "Verified Petition for Dissolution of Marriage." State's Exhibit 2. Rangel told Dumes that she would need to view a video on being a *pro se* litigant, and Dumes was "aggressive" and indicated that she did not want to do that. Transcript at 19. Dumes said that she would have the attorney do the filing for her and that she would be back.

Sometime later, Dumes returned with the Verified Petition for Dissolution of Marriage and also a document titled "Appearance by Attorney in Domestic Relations" with the name of Michelle Smith as the attorney. State's Exhibit 1. Rangel file-stamped

2

the two documents. Rangel later discovered that the attorney identification number did not belong to the attorney listed.

Indiana State Police Detective Dontonio Nibbs was assigned the case. He determined that the information on the appearance form, including the attorney identification number that did not match the attorney name, the telephone number, and the address, was not correct, and thought that Teresa, the petitioner, could have been a suspect.

Detective Nibbs went to speak with Teresa in June or July 2012. During the conversation, Teresa called a woman she identified as Dumes and at one point referred to the woman as "Erica Dumes," and Detective Nibbs recorded the conversation. State's Exhibit 5 at 6:47-6:50. During the call, Teresa asked Dumes if Michelle Smith was her lawyer, and Dumes said "that's a long story" and that she "had to put that on there" because they would not let her file it for Teresa and were telling her that Teresa had to come down there to watch a video, and that Smith was fired. Id. at 1:00-1:12. Teresa asked whether she had to go watch a video, and Dumes said no. Dumes said that she had to put Michelle Smith's name down so that Dumes could file it for Teresa and Teresa would not have to watch the video. Teresa asked whether she had a lawyer, and Dumes said that she did not have a lawyer and that she did not need one. Teresa asked: "So the law office you work for, they . . . helped you work these papers out, right?" Id. at 3:55-4:03. Dumes responded affirmatively.

Teresa gave Detective Nibbs documents that she had received from Dumes, including a document titled Decree of Dissolution of Marriage and Settlement

3

Agreement, and a document titled Verified Waiver of Final Hearing, both of which were signed by Dumes and contained a notary public seal for Dumes but were not signed by Teresa or her husband. Detective Nibbs performed a BMV check of Dumes and found that she also had a name of Erica Stone. He contacted the Secretary of State and found that there was a notary with the name of Erica Stone but not with the name of Erica Dumes. Detective Nibbs also discovered that Dumes was not listed on the Indiana Roll of Attorneys.

After listening to the conversation between Teresa and Dumes, Detective Nibbs called the same number Teresa had called and asked the person Teresa had spoken with to meet with him. Dumes met with Detective Nibbs.

In March 2013, the State charged Dumes with Count I, forgery as a class C felony; and Count II, unauthorized practice of law as a class B misdemeanor. At the beginning of the bench trial, the prosecutor mentioned stipulations, stated that State's Exhibit 1 was an appearance form, and said:

> Stipulation is that Michelle Smith's signature you see here at the bottom, that is Small Claims Court Judge Michelle Smith here in Center Township. She did not sign that document, approve it, or ask anyone to approve it on her behalf. The attorney number below that actually go [sic] to someone named George Plews and it's the same for him, Judge; he did not give anyone permission to use his attorney number or file that document for any reason.

Transcript at 9-10. Dumes's counsel did not object or indicate that the stipulation was not correct. In his opening statement, the prosecutor argued that the document clearly is forged and the case was going to focus on who uttered the document at the Marion County Clerk's office. Dumes's counsel waived opening statement.

4

Rangel, Detective Nibbs, and Teresa testified to the foregoing. Teresa testified that she could not file *pro se* to obtain her divorce because Michelle Smith was still listed as her attorney. Detective Nibbs also stated that the person he spoke with on the phone at the same number dialed by Teresa was Dumes, he met with Dumes, and identified her as the defendant. During closing argument, Dumes's counsel argued that the intention was to keep Teresa from having to watch a video.

The court found Dumes guilty as charged. The court stated:

> I think the State has very well shown identity in this matter. Identification can be not just by face but by voice and other means and I think they've put on a strong case that this woman, the defendant, was the person that Teresa and the detective were both talking to. And in regard to who brought those documents to the Clerk's office and gave them to the clerk, the Court notes that in the telephone conversation with Teresa, her direct question was: And is Michelle Smith my lawyer? And the defendant answered: I only put that on there because they was trying to make me; they wouldn't let me file for you. And with the voice identification, with that statement, the Court believes the State has met its burden of proof as to both counts.

Id. at 59-60. The court sentenced Dumes to a suspended sentence of three years for Count I, forgery as a class C felony, and a suspended sentence of sixty days for Count II, unauthorized practice of law as a class B misdemeanor.

## DISCUSSION

We first note that the State did not file an appellee's brief. The obligation of controverting arguments presented by the appellant properly remains with the State. Bovie v. State, 760 N.E.2d 1195, 1197 (Ind. Ct. App. 2002). When the appellee does not submit a brief, the appellant may prevail by making a *prima facie* case of error – an error at first sight or appearance. Id. However, we are still obligated to correctly apply the law to the facts of the record to determine if reversal is required. Id.

The issue is whether the evidence is sufficient to sustain Dumes's convictions. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility or reweigh the evidence. Id. We consider conflicting evidence most favorably to the trial court's ruling. Id. We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." Id. (quoting Jenkins v. State, 726 N.E.2d 268, 270 (Ind. 2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. Id. at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. Id.

A.    Forgery

The offense of forgery as a class C felony is governed by Ind. Code § 35-43-5-2, which at the time of the offense provided in part that "[a] person who, with intent to defraud, makes, utters, or possesses a written instrument in such a manner that it purports to have been made . . . by authority of one who did not give authority . . . commits forgery, a Class C felony." Ind. Code § 35-43-5-2(b)(4) (Supp. 2012).[1] The charging information alleged that Dumes "did, with intent to defraud, utter to an employee of the Marion County Clerk's Office, a written instrument, that is Appearance by Attorney in Domestic Relations, said instrument being of the following form: (see Exhibit 1) in such a manner that said instrument purported to have been made by the authority of Michelle Smith and/or George McCorkell Plews, who did not give authority." Appellant's

_____

[1] Subsequently amended by Pub. L. No. 158-2013, § 469 (eff. July 1, 2014).

6

Appendix at 29. Thus, to convict Dumes of forgery as a class C felony, the State needed to prove that she, with intent to defraud, uttered a written instrument, the Appearance by Attorney in Domestic Relations, in such a manner that it purported to have been made by the authority of Michelle Smith and/or George McCorkell Plews who did not give authority.

Dumes's sole argument is that there was no evidence that she was not authorized to file the appearance. She asserts that the State did not offer any evidence that Smith or Plews did not give authority for the uttering of the appearance form and points to the Roll of Attorneys to indicate that Smith and Plews are attorneys. Dumes contends that "[w]ithout proof that neither Smith nor Plews authorized Dumes to affix their attorney information to the Appearance form, the State failed to prove that element of the forgery offense." Appellant's Brief at 7.

The record reveals that the prosecutor recited stipulations at the beginning of the trial and stated that State's Exhibit 1 was an appearance form and that Smith did not sign it or ask anyone to approve it on her behalf and that Plews did not give anyone permission to use his attorney number or file that document for any reason. Dumes's counsel did not object or indicate that the stipulation was not correct. Further, Dumes filed the appearance with the name of attorney, Michelle Smith, with the wrong attorney identification number and address. In a phone call between Teresa and Dumes, when asked by Teresa if Michelle Smith was her attorney, Dumes said "that's a long story" and that she "had to put that on there" because they would not let her file it for Teresa and were telling her that Teresa had to come down there to watch a video. State's Exhibit 5

7

at 1:00-1:12. Dumes said that she had to put Michelle Smith's name down so that Dumes could file it for Teresa and Teresa would not have to watch the video. Teresa asked whether she had a lawyer, and Dumes said that she did not have a lawyer. Based on the record, we conclude that the State presented evidence of a probative nature from which a reasonable trier of fact could have found that Dumes was guilty of forgery as a class C felony.

B.      Unauthorized Practice of Law

The offense of unauthorized practice of law as a class B misdemeanor is governed by Ind. Code § 33-43-2-1, which provides that "[a] person who: (1) professes to be a practicing attorney; (2) conducts the trial of a case in a court in Indiana; or (3) engages in the business of a practicing lawyer; without first having been admitted as an attorney by the supreme court commits a Class B misdemeanor." The charging information alleged that Dumes:

> did engage in the business of a practicing lawyer to wit: accepting a fee to prepare and/or file a Verified Petition for Dissolution of Marriage and/or a Verified Waiver of Final Hearing and/or a Decree of Dissolution of Marriage and Settlement Agreement, without first having been admitted as an attorney by the Indiana Supreme Court.

Appellant's Appendix at 29. Thus, to convict Dumes of the unauthorized practice of law as a class B misdemeanor, the State needed to prove that she engaged in the business of a practicing lawyer by accepting a fee to prepare and/or file a petition for dissolution, verified waiver of final hearing, or decree of dissolution without first having been admitted as an attorney by the Supreme Court.

8

Dumes concedes that she provided several forms to Teresa, but argues that they are widely available, rather simple, and require the addition of very little information. She asserts that "filling in the forms that Dumes used here, the likes of which are available on our Supreme Court's website, is not engaging in the practice of law." Appellant's Brief at 10. Dumes does not argue that the evidence is insufficient because she did not accept a fee to prepare and/or file the documents.

"The practice of law includes "the doing or performing services in a court of justice, in any matter depending therein, throughout its various stages . . . [b]ut in a larger sense it includes legal advice and counsel . . . .'" Matter of Fletcher, 655 N.E.2d 58, 60 (Ind. 1995) (quoting Fink et al. v. Peden, 214 Ind. 584, 589, 17 N.E.2d 95, 96 (1938) (other citations omitted)). "The core element of practicing law is the giving of legal advice to a client and placing oneself in the very sensitive relationship wherein the confidence of the client, and the management of his affairs, is left totally in the hands of the attorney." Id. The practice of law involves advising or rendering services for another. Groninger v. Fletcher Trust Co., 220 Ind. 202, 207, 41 N.E.2d 140, 141 (1942). A natural person may plead his own case in court or do any of the things for himself which if done for another would constitute practicing law. Id.

The fact that attorney-drafted forms were used as the starting point for the documents does not insulate a defendant from the charge of unauthorized practice of law. See State ex rel. Ind. State Bar Ass'n v. Northouse, 848 N.E.2d 668, 672 (Ind. 2006). In State ex rel. Ind. State Bar Ass'n v. Ind. Real Estate Ass'n, 244 Ind. 214, 220, 191 N.E.2d 711, 715 (1963), the Court stated:

9

Generally, it can be said that the filling in of blanks in legal instruments, prepared by attorneys, which require only the use of common knowledge regarding the information to be inserted in said blanks, and general knowledge regarding the legal consequences involved, does not constitute the practice of law. However, when the filling in of such blanks involves considerations of significant legal refinement, or the legal consequences of the act are of great significance to the parties involved, such practice may be restricted to members of the legal profession.

In that case, the Court held that execution of deeds is restricted to attorneys but real estate brokers and salespersons may fill in the forms of other legal instruments prepared by attorneys, including listing agreements, offers to purchase, purchase agreements, and short form leases. 244 Ind. at 226, 191 N.E.2d at 717.

In Miller v. Vance, the Indiana Supreme Court considered whether the preparation of a mortgage instrument by a bank employee who was not an attorney constituted the unauthorized practice of law. 463 N.E.2d 250, 251 (Ind. 1984), disapproved of on other grounds by Charter One Mortg. Corp. v. Condra, 865 N.E.2d 602 (Ind. 2007). The Court reasoned that a bank employee performing "the routine service of filling in information on standard real estate mortgage forms . . . incidental to and directly connected with the bank's regular business of making loans" did not constitute the practice of law. Id. at 252. However, the Court cautioned: "[T]here are certain limitations which apply to bank employees similar to those placed upon real estate brokers. . . . The lay bank employee may not give advice or opinions as to the legal effects of the instruments he prepares or the legal rights of the parties." Id. at 253. "Thus, in both Indiana Real Estate and Miller, the Court permitted non-lawyers to fill out legal forms in situations in which the chance for legal error was low." Northouse, 848 N.E.2d at 673. "The forms were used in routine transactions in the course of the jobs for which the non-lawyers were trained in Miller

10

and for which the non-lawyers were both trained and licensed in Indiana Real Estate, and the forms were prepared by lawyers for use in such transactions." Id.

"By contrast, an injunction preventing the unauthorized practice of law was issued in State ex rel. Ind. State Bar Ass'n v. Diaz, 838 N.E.2d 433 (Ind. 2005), where Diaz, a non-attorney, was performing immigration-related services that 'went far beyond the use of forms.'" Id. (quoting Diaz, 838 N.E.2d at 445). In that case, the Court observed that Diaz advised clients on many aspects of immigration law and ventured into drafting contracts and a pleading. Diaz, 838 N.E.2d at 445. The Court observed that immigration services could not be considered routine transactions and that each case is unique and the procedures can be complex. Id. In Northouse, the Court held that drafting and preparing testamentary and trust documents was clearly the practice of law. Northouse, 848 N.E.2d at 673.

The record reveals that Dumes spoke with Teresa on the phone regarding her divorce, provided advice to Teresa, accepted Teresa's money, prepared and filed a Verified Petition for Dissolution of Marriage, and prepared a Verified Waiver of Final Hearing and a Decree of Dissolution of Marriage and Settlement Agreement. State's Exhibit 1. We also observe that more than one year and eight months passed between the filing of the Verified Petition for Dissolution of Marriage filed by Dumes on May 31, 2012, and the date of the criminal trial on February 12, 2014, and Teresa testified at the trial that she still wanted to be divorced but could not file *pro se* to obtain a divorce because Michelle Smith was still listed as her attorney. Under the circumstances, we conclude that the State presented evidence of a probative nature from which a reasonable

11

trier of fact could have found that Dumes was guilty of the unauthorized practice of law as a class B misdemeanor.

## CONCLUSION

For the foregoing reasons, we affirm Dumes's convictions.

Affirmed.

BAILEY, J., and ROBB, J., concur.