

**FILED**

May 31 2016, 5:37 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT *PRO SE*

Joseph C. Lehman
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joseph C. Lehman,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | May 31, 2016<br><br>Court of Appeals Case No.<br>20A03-1511-CR-1963<br><br>Appeal from the Elkhart Superior Court<br><br>The Honorable David C. Bonfiglio, Judge<br><br>Trial Court Cause No.<br>20D06-1412-CM-2042 |

**Bradford, Judge.**

# Case Summary

[1]     In February of 2014, the Indiana Supreme Court suspended Appellant-Defendant Joseph Lehman from practicing law in the state of Indiana for not

less than two years. In the year following his suspension, Lehman continued to provide various legal services to new and existing clients. Appellee-Plaintiff the State of Indiana ("the State") subsequently charged Lehman with three counts of Class B misdemeanor practicing law by a non-attorney. After a bench trial, Lehman was found guilty as charged. Lehman raises three contentions for our review on appeal: (1) whether the trial court erred in denying his request for change of judge; (2) whether Lehman waived his right to a trial by jury; and (3) whether there was sufficient evidence to support his convictions. We affirm the trial court in all respects.

# Facts and Procedural History

### i. Jim Marlow

[2] On February 19, 2014, the Indiana Supreme Court suspended Lehman from the practice of law for "not less than two years, without automatic reinstatement, beginning April 3, 2014." Ex. 2, p. 3. In early 2014, Jim Marlow hired Lehman for $800 to represent him in a divorce. When asked about his suspension, Lehman told Marlow that "it was nothing to worry about that he was going to appeal it and we'd have no issues." Tr. p. 9.

[3] Attorney Vincent Campiti represented Marlow's wife in the divorce and was not aware of Lehman's suspension. On April 9 and 10, 2014, Lehman and Campiti exchanged several emails in which the two attempted to finalize a settlement agreement between Marlow and his wife. On April 10, Lehman

emailed Campiti asking him to "review the changes I made to meet your issues. If acceptable, have your client sign, and I'll propose that Mr. Marlow accept those changes." Ex. 3, p. 4. On April 22, Lehman sent Campiti an email which read, "Mr. Marlow will be reviewing the agreement tomorrow at 3:30 PM." Ex. 3, p. 7. Between April 21 and 25, phone records indicate that Marlow and Lehman exchanged several calls and text messages. According to Marlow, Lehman wished to meet and review documents pertaining to his divorce. Marlow ultimately decided to "just walk[] away," declined to meet with Lehman, and hired another attorney. Tr. p. 9.

## ii. Neredya Alvarez

[4] In October of 2014, Neredya Alvarez was looking for an attorney to represent her in a divorce and was referred to Lehman by a co-worker. Alvarez called Lehman who arranged to meet her at a restaurant in Goshen. Alvarez paid Lehman an $80 consultation fee and, when she asked for a receipt, Lehman wrote one on the back of a business card. The front of the business card read "Joseph C. Lehman, Attorney at Law" and provided a Goshen address. Ex. 5.

[5] After speaking for approximately five to fifteen minutes about Alvarez's legal issues, Lehman told Alvarez "Well I can't help you in Court because I'm not supposed to go to Court, but I can complete the paperwork for you," and stated that it would cost $1000 to complete the paperwork. Tr. p. 38. Alvarez was upset that Lehman did not tell her of his inability to go to court prior to setting up the meeting. Lehman never informed Alvarez that he was suspended from

practicing law. Alvarez met with another attorney shortly thereafter. When the attorney learned of Alvarez's dealings with Lehman, he informed Alvarez of Lehman's suspension and assisted her in reporting the misconduct. On October 28, 2014, Alvarez met with Goshen police who suggested that she ask Lehman to return the $80 consultation fee. Ultimately, Lehman returned the money.

### iii. Innocente Lacan

In November of 2014, Innocente Lacan hired Lehman to re-title some real estate in order to remove his ex-wife's name from the title.[1] On November 22, 2014, Lacan and Lehman met at a public library and agreed on a fee of $50 for preparing the document needed to re-title the property. Lehman prepared a quitclaim deed for Lacan on the same day, Lacan paid Lehman $50, and Lehman gave Lacan a receipt bearing the initials JL. The quitclaim deed and receipt were admitted into evidence at trial. Lehman did not inform Lacan that his license was suspended and Lacan believed he was hiring an attorney when he contracted with Lehman.

Lacan's ex-wife refused to sign the deed and Lehman explained how Lacan could go about getting the deed filed through the clerk of courts without his ex-wife's signature. Lacan took the deed to the Elkhart County clerk's office and gave it to Patti Miller, the clerical supervisor at the office. At some point,

---

[1] Lehman had represented Lacan in the divorce approximately ten years earlier.

Lacan informed Miller that Lehman had prepared his paperwork. Miller was aware that Lehman was suspended from practicing law and notified police.

*iv. Procedural History*

On December 19, 2014, the State charged Lehman with two counts of Class B misdemeanor practicing law by a non-attorney. The State later amended its charging information to include a third count of practicing law by a non-attorney. On January 26, 2015, Lehman filed a motion for a change of judge. After a March 18, 2015 hearing, the trial court denied Lehman's motion. On April 22, 2015, the trial court held a hearing at which Lehman requested a jury trial and motioned for severance. On May 8, 2015, the trial court found that Lehman had waived his right to a jury trial and denied his motion for severance. A bench trial was held on October 5, 2015, and Lehman was found guilty as charged and sentenced to 540 days suspended to one year of probation.

# Discussion and Decision

## I. Change of Judge

Lehman argues that the trial judge was prejudiced against him and erred in denying his motion for change of judge. Indiana Criminal Procedure Rule 12(B) provides as follows:

In felony and misdemeanor cases, the state or defendant may request a change of judge for bias or prejudice. The party shall timely file an affidavit that the judge has a personal bias or prejudice against the state or defendant. The affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists, and shall be accompanied by a certificate from the attorney of record that the attorney in good faith believes that the historical facts recited in the affidavit are true. The request shall be granted if the historical facts recited in the affidavit support a rational inference of bias or prejudice.

"[T]he appropriate standard of review of a trial judge's decision to grant or deny a motion for change of judge under Indiana Criminal Rule 12 is whether the judge's decision was clearly erroneous. Reversal will require a showing which leaves us with a definite and firm conviction that a mistake has been made." *Sturgeon v. State*, 719 N.E.2d 1173, 1182 (Ind. 1999).

[10]  Lehman's affidavit for change of judge reads as follows:

1. In 2007, a fellow attorney canvassed Judge Bonfiglio regarding his perception of me and was told that he had no pleasant experiences with me, in that I often wait until the day before a hearing to request a continuance.

2. Short notice continuances of various types of hearings are not unknown, even in medium sized firms, much less for those of us in solo practice.

3. And it is also not unknown for an attorney calendar to open up at very short notice, so for the court to infer that I was gaming the system by showing up in Juvenile Court the next day, is not fair.

4. I have no problem with judges joking about a mistake in a translation into/from Spanish, but it seems to show just an attitude against me that has roots from back even before I ran for judge against George Biddlecome, whom I had never met, but who would not even shake my extended hand.

5. Now, at the end of March, when I appeared in court, for an update on a case to be set for trial, given that I had to close my practice on April 3, 2014, I could not understand Judge Bonfiglio's attitude when I stated that I would have been able to be a very good trial attorney for the defendant.

6. Even though I have always shown respect for all judges in this county, there have been negatives thrown against me for many years, by certain members of the legal community, which I understand is part of the territory, here in Elkart county.

7. Finally, since I do not know Judge Bonfiglio socially or personally, my perceptions might be incorrect, but I nevertheless must infer a worst case scenario regarding potential bias or prejudice.

Appellant's Amended App. p. 24. According to the chronological case summary ("CCS"), the trial court denied Lehman's motion for change of judge because "there [were] no cogent statements in [his] Affidavit for Change of Judge that would support a rational inference of bias or prejudice by this judicial officer. See Order for further." Appellant's App. p. 3. However, Lehman did not include the trial court's written order in his appellate appendix. The State argues that, due to this failure, Lehman has provided an incomplete record for review in violation of Indiana Appellate Rule 50(B), and thus has waived this issue for review. While it is unfortunate that we do not have the trial court's order, we prefer to resolve matters on the merits where possible and

find the record sufficient to do so here. *See Rexroad v. Greenwood Motor Lines, Inc.*, 36 N.E.3d 1181, 1183 (Ind. Ct. App. 2015) ("where possible, we prefer to address cases on their merits").

[11] "Adjudicating a request for change of judge based on Rule 12(B) requires an objective, not subjective, legal determination by the judge, who is 'to examine the affidavit, treat the facts recited in the affidavit as true, and determine whether these facts support a rational inference of bias or prejudice.'" *Voss v. State*, 856 N.E.2d 1211, 1216 (Ind. 2006) (quoting *Sturgeon*, 719 N.E.2d at 1181). Even assuming Lehman's affidavit is entirely accurate, it creates no rational inference of prejudice.

[12] Paragraph one indicates that, as of nine years ago, Judge Bonfiglio had "no pleasant experiences" with Lehman. This is a far cry from bias. Paragraphs two and three reveal Lehman's general opinions on typical attorney practice. These statements are not rooted in "historical fact," as required by Criminal Rule 12(B), and merely offer possible negative inferences the trial court could have drawn from his actions in previous cases. *See Sturgeon*, 719 N.E.2d at 1181 ("movant's belief in the judge's bias [] is not a 'historical fact' as required by Criminal Rule 12(B)"). Likewise, paragraphs four and six make no reference to Judge Bonfiglio and seem to focus on disparaging remarks made by other members of the legal community. Accordingly, these assertions are irrelevant. Paragraph five is incredibly vague, stating merely that Judge Bonfiglio had an "attitude" with Lehman on one occasion. Finally, Lehman notes that he does

not know Judge Bonfiglio personally and that his allegations of bias are merely speculation. We find that Lehman's affidavit is not rooted in historical facts and creates no rational inference of bias. Accordingly, the trial court did not err in denying Lehman's motion.

# II. Trial by Jury

[13] Indiana Criminal Procedure Rule 22 provides as follows:

> A defendant charged with a misdemeanor may demand trial by jury by filing a written demand therefor not later than ten (10) days before his first scheduled trial date. The failure of a defendant to demand a trial by jury as required by this rule shall constitute a waiver by him of trial by jury unless the defendant has not had at least fifteen (15) days advance notice of his scheduled trial date and of the consequences of his failure to demand a trial by jury.

[14] On January 7, 2015, Lehman received and signed his advisement of rights and penalties which included the right "To a speedy and public trial by jury. In misdemeanors cases defendant MUST file a written request [] for a jury trial at least ten (10) days before the Omnibus date." Appellant's Amended App. p. 20. Indiana Code section 35-36-8-1(c) provides that

> (c) The omnibus date for persons charged only with one (1) or more misdemeanors:
>
> (1) must be set by the judicial officer at the completion of the initial hearing;

> (2) must be no earlier than thirty (30) days (unless the defendant and the prosecuting attorney agree to an earlier date), and no later than sixty-five (65) days, after the initial hearing; and
>
> (3) is the trial date.

The CCS shows that, at the March 18, 2015 hearing, the trial court set the omnibus date for April 22, 2015. Accordingly, Lehman was required to file a request for jury trial by April 12, 2015 or waive that right. Ind. Crim. Proc. R. 22. Lehman filed a request for jury trial on April 22, 2015. Accordingly, he waived his right to a jury trial. Lehman's argument that he was unaware that April 22 was considered his first scheduled trial date for Rule 22 purposes lacks merit. Ignorance is no excuse for failing to comply with the court's rules. *See generally Evolga v. State*, 519 N.E.2d 532, 534 (Ind. 1988) ("Ignorance of the court's procedural rules is not a valid reason for being granted permission to file a belated appeal.").

# III. Sufficiency of Evidence

Lehman argues that there was insufficient evidence to support his convictions for practicing law by a non-attorney.

> When reviewing the sufficiency of the evidence, we consider only the probative evidence and reasonable inferences supporting the verdict. *Mork v. State*, 912 N.E.2d 408, 411 (Ind. Ct. App. 2009) (citing *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007)). We do not reweigh the evidence or assess witness credibility. *Id*. We consider conflicting evidence most favorably to the trial court's ruling. *Id*. We will affirm the conviction unless no reasonable

fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.*

*Boggs v. State*, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010).

[17] To prove that Lehman was guilty of practicing law by a non-attorney, the State was required to show that Lehman (1) professed to be a practicing attorney, (2) conducted the trial of a case in a court in Indiana, or (3) engaged in the business of a practicing lawyer, without being admitted as an attorney by the Indiana Supreme Court. Ind. Code § 33-43-2-1. Lehman concedes that he was not permitted to practice law after his suspension date of April 3, 2014. However, he argues that the evidence is insufficient because he only provided "general legal information" to Lacan and Alvarez, and did not speak to Marlow after his suspension date.

[18] "The practice of law includes 'the doing or performing services in a court of justice, in any matter depending therein, throughout its various stages...[b]ut in a larger sense it includes legal advice and counsel....'" *Matter of Fletcher*, 655 N.E.2d 58, 60 (Ind. 1995) (quoting *Fink v. Peden*, 214 Ind. 584, 585, 17 N.E.2d 95, 96 (1938)). "The core element of practicing law is the giving of legal advice to a client and placing oneself in the very sensitive relationship wherein the confidence of the client, and the management of his affairs, is left totally in the hands of the attorney." *Id.* "The practice of law involves advising or rendering services for another." *Dumes v. State*, 23 N.E.3d 798, 803 (Ind. Ct. App. 2014). Additionally, Indiana courts have repeatedly held that drafting or preparing

legal instruments is generally considered practicing law. *See State ex rel. Ind. State Bar Ass'n v. Northouse*, 848 N.E.2d 668, 673 (Ind. 2006) ("Drafting and preparing testamentary and trust documents is clearly the practice of law."); *see also State ex rel. Ind. State Bar Ass'n v. Diaz*, 838 N.E.2d 433, 444 (Ind. 2005) (preparation of immigration documents and drafting contracts, pleadings, and a will, constituted unauthorized practice of law); *State ex rel. Ind. State Bar Ass'n v. Ind. Real Estate Ass'n*, 244 Ind. 214, 220, 191 N.E.2d 711, 715 (1963) (filling in blanks of legal instruments, prepared by attorneys, is considered unauthorized practice of law when doing so involves considerations of significant legal consequences).

## A. Marlow

[19] Several emails were admitted into evidence which reveal that Lehman continued to negotiate a settlement agreement with counsel for Marlow's wife in the weeks following his suspension. Such activity certainly qualifies as "engag[ing] in the business of a practicing lawyer" as contemplated by Section 33-43-2-1. *See Diaz*, 838 N.E.2d at 448 ("The practice of law includes making it one's business to act for others in legal formalities, negotiations, or proceedings."). Furthermore, Marlow's testimony directly contradicts Lehman's claim that he did not speak to Marlow after his suspension date. Between April 21 and 25, 2014, phone records indicate that Marlow and Lehman exchanged several calls and text messages. According to Marlow, Lehman wished to meet and review documents pertaining to his divorce.

## B. Alvarez

[20] Approximately six months after Lehman was suspended from practicing law, Lehman conducted an initial consultation with Alvarez, accepted an $80 consultation fee, and gave Alvarez a receipt for the fee written on the back of his business card. The front of the business card read "Joseph C. Lehman, Attorney at Law." Ex. 5. Although Lehman told Alvarez that he could not appear in court, he never informed her that he was suspended and offered to complete the paperwork necessary for her case for $1000.

[21] We find that Lehman's use of business cards which suggested that he was still a licensed attorney, and his failure to correct Alvarez's misperception that he was an attorney, are sufficient facts to show that Lehman professed to be a practicing attorney for purposes of Section 33-43-2-1. Furthermore, as we noted above, providing legal advice and preparing legal documents constitutes the practice of law. Therefore, engaging in legal consultation with Alvarez, accepting a consultation fee, and offering to complete the paperwork necessary to seek a divorce are facts sufficient to establish that Lehman was "engag[ing] in the business of a practicing lawyer." Ind. Code § 33-43-2-1.

## C. Lacan

[22] In November of 2014, approximately seven months after his suspension, Lehman prepared a quitclaim deed for Lacan for $50. The deed and a receipt for the work were admitted as exhibits at trial. Lehman had represented Lacan

in a divorce ten years earlier and Lacan hired Lehman believing that he was still a licensed attorney. The Indiana Supreme Court has previously held that preparation of a deed by non-lawyers is considered unauthorized practice of law. *Ind. Real Estate Ass'n*, 244 Ind. at 225, 191 N.E.2d at 717. Accordingly, Lehman's preparation of the quitclaim deed for Lacan constituted unauthorized practice of law.

# Conclusion

[23] We conclude that (1) the trial court did not clearly error in finding that Lehman failed to establish historical facts which support a rational inference of bias necessary to justify a change of judge; (2) Lehman waived his right to a jury trial; and (3) there was sufficient evidence in the record to support Lehman's convictions.

[24] The judgment of the trial court is affirmed.

Bailey, J., and Altice, J., concur.