# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 20 2020, 10:39 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Denise L. Turner
DTurner Legal LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeffery Manley McMillen, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | April 20, 2020 <br><br> Court of Appeals Case No. 19A-CR-2549 <br><br> Appeal from the Shelby Circuit Court <br><br> The Honorable Trent E. Meltzer, Judge <br><br> Trial Court Cause No. 73C01-1812-F6-577 |

**Kirsch, Judge.**

[1] Jeffery Manley McMillen ("McMillen") was convicted after a bench trial of domestic battery[1] as a Level 5 felony and interference with the reporting of a crime,[2] a Class A misdemeanor. He appeals his convictions and raises the following restated issue for our review: whether the State presented sufficient evidence to support his convictions.

[2] We affirm.

## Facts and Procedural History

[3] At the time of the incident in this case, McMillen and H.M. were married and had four children together, ranging in age from eight to seventeen years old. *Tr. Vol. 2* at 23. On December 19, 2018, McMillen, H.M., and three of their children were at their home in Shelby County, Indiana. *Id.* at 24. Their seventeen-year-old child was not at home. *Id.* It was the night before the children's last day of school before winter break, and H.M. asked McMillen whether he would be able to help pay for Christmas gifts for the children's teachers. *Id.* When H.M. posed the question to McMillen, he was headed up the stairs, and he ran down the stairs. *Id.* McMillen stood in front of H.M.'s face, and yelled, "[Y]ou know I don't have any money," which caused H.M. to back away from him. *Id.* McMillen was "in [her] face," and so she grabbed his neck. *Id.*

---

[1] *See* Ind. Code § 35-42-2-1.3(c)(4)(A).

[2] *See* Ind. Code § 35-45-2-5.

[4] H.M. went to the bathroom and closed the door so she could calm down. *Id*. at 25. H.M. explained that in situations like that, McMillen usually leaves the house, otherwise things just get "worse, worse and worse." *Id*. at 25, 27. This time, McMillen went to the basement to work on a "wood burning" project. *Id*. at 25. While H.M. was in the bathroom, she began listening to a voicemail McMillen had left on her phone that he did not want the children to hear. *Id*.

[5] McMillen could hear the voicemail being played through a vent. *Id*. at 25, 35. He went upstairs and kicked in the bathroom door in order to get to H.M. *Id*. H.M. was wearing a hooded sweatshirt with a pocket, and she attempted to put her phone in that pocket, but McMillen "grabbed it from [her]." *Id*. at 25-26. One of the children found another phone in the house and used it to call 911. *Id*. at 27.

[6] Shelbyville Police Department Officer James Jones ("Officer Jones") was dispatched to the home after a 911 call was received from a child who reported that a "physical domestic" was in progress. *Id*. at 7. When Officer Jones arrived, a neighbor told the officer that a man had "just [run] out of the house and took off in a car." *Id*. Officer Jones then made contact with H.M. and observed that there were three children in the house with H.M. *Id*. at 8, 13. He also observed a red mark on H.M.'s right cheek. *Id*. at 10.

[7] After he had a brief conversation with H.M., Officer Jones found out that McMillen had driven away in a black Civic and gave the information to other officers. *Id*. at 8. Shortly thereafter, another officer located McMillen and

stopped him four or five blocks away. *Id*. McMillen admitted to that officer that McMillen had been arguing with H.M. over issues about paying the rent. *Id*. at 18. McMillen also admitted to the officer that he had kicked in the bathroom door and grabbed H.M.'s cell phone, which he had with him at the time of the traffic stop. *Id*. at 19. McMillen told the officer that he had taken H.M.'s cell phone because she was calling 911. *Id*. at 22. In 2013, McMillen had been previously charged with and pleaded guilty to domestic battery committed against H.M in Cause Number 73D02-1306-FD-223. *Id*. at 69-71; *State's Exs*. 13, 14.

[8] On December 20, 2018, the State charged McMillen with Level 6 felony domestic battery in the presence of a child and Class A misdemeanor interference with the reporting of a crime. *Appellant's App. Vol. II* at 14-15. That same day, the State moved to amend the charging information to add a count for domestic battery with a prior unrelated conviction for domestic battery against the same family or household member as a Level 5 felony, and the trial court granted the motion on December 28, 2018. *Id*. at 4, 19-20.

[9] On March 8, 2019, McMillen filed a written waiver of jury trial. *Id*. at 21-22. A bench trial was held on September 10, 2019, and at the conclusion, the trial court found McMillen guilty on all counts and entered a judgment of conviction against him for Level 5 felony domestic battery and Class A misdemeanor interference with the reporting of a crime. *Id*. at 25-29. On October 22, 2019, the trial court sentenced McMillen to thirty-six months for his domestic battery conviction and twelve months for his interference with the reporting of a crime

conviction and ordered the sentences to be served concurrently. *Id*. at 25-29. The trial court ordered that McMillen serve four days executed for each count and ordered that the remainder of each sentence be suspended to probation. *Id*. McMillen was required to serve 180 days of his probation on home detention. *Id*. at 28-34. McMillen now appeals.

## Discussion and Decision

[10] McMillen argues that the evidence presented at trial was insufficient to support his convictions. When we review the sufficiency of evidence to support a conviction, we do not reweigh the evidence or assess the credibility of the witnesses. *Lehman v. State,* 55 N.E.3d 863, 868 (Ind. Ct. App. 2016), *trans. denied.* We consider only the evidence most favorable to the trial court's ruling and the reasonable inferences that can be drawn from that evidence. *Lock v. State,* 971 N.E.2d 71, 74 (Ind. 2012). We also consider conflicting evidence in the light most favorable to the trial court's ruling. *Oster v. State,* 992 N.E.2d 871, 875 (Ind. Ct. App. 2013), *trans. denied.* A conviction will be affirmed if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Wolf v. State*, 76 N.E.3d 911, 915 (Ind. Ct. App. 2017).

[11] McMillen contends that the State presented insufficient evidence to support both his conviction for domestic battery and his conviction for interference with the reporting of a crime. As to his domestic battery conviction, he asserts that the State failed to provide sufficient evidence that he touched H.M. in a rude,

insolent, or angry manner. He claims that the evidence only showed that he grabbed H.M.'s phone and not that he touched her. As to his conviction for interference with the reporting of a crime, McMillen argues that the State failed to prove two essential elements of the crime: (1) that he had the intent to conceal the commission of a crime; and (2) that he interfered with or prevented H.M. from calling 911. He contends that no crime had been committed, and, therefore, he did not take H.M.'s phone to conceal the commission of a crime. He further asserts that the evidence did not show that H.M. was calling 911 when he took her phone or had even discussed calling 911.

[12] In order to convict McMillen of domestic battery as a Level 5 felony as charged, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally touched a family or household member, H.M., in a rude, insolent, or angry manner and that he had a previous conviction for a battery offense against the same family or household member. Ind. Code § 35-42-2-1.3(a)(1), (c)(4)(A). McMillen does not challenge the fact that he had a prior domestic battery conviction against H.M. He only challenges the sufficiency of the evidence in that he asserts that he did not touch H.M. in a rude, insolent, or angry manner.

[13] The evidence presented at trial reasonably supported a finding by the trial court that McMillen touched H.M. in a rude, angry, or insolent manner. When Officer Jones arrived at the house, he observed a red mark on H.M.'s right cheek. *Tr. Vol. II* at 10. McMillen admitted at trial that he struck H.M. in the cheek with his elbow when she tried to get her phone back from him, but he

claimed it was an accident. *Id*. at 58-59. However, the trial court as factfinder was not required to accept McMillen's claim that he did not intend to hit H.M.

[14] There was also evidence that McMillen touched H.M. in a rude, angry, or insolent manner when he grabbed her phone from her. When McMillen testified, he acknowledged that there "could have been contact" when he grabbed the phone from H.M. but claimed that he did not have the requisite intent, an explanation that the factfinder was not required to accept. *Tr. Vol. II* at 57. H.M. testified that the bathroom was small, that when McMillen entered the bathroom, she was attempting to put the phone in the front pocket of her sweatshirt, and that McMillen put his arms around her. *Id*. at 26. On redirect examination, H.M. was asked whether McMillen touched her, and she provided the following answers: "[H]e, he grab . . . . He, he put his arm he put his he put, I don't, like I don't I wouldn't consider . . . . He grabbed my phone from me and he probably . . . . He didn't like I don't know he had his arm around like right around me, but I mean." *Id*. at 45. H.M. was asked one final time about whether McMillen touched her, and she stated, "Ok I guess, I don't know." *Id*. Although both H.M. and McMillen equivocated about whether McMillen touched H.M. when he grabbed her cell phone away from her, it is for the trier of fact to resolve conflicts in the evidence and to decide which witnesses to believe or disbelieve. *Moore v. State*, 27 N.E.3d 749, 755-56 (Ind. 2015).

[15] Additionally, in the 911 call, the child who called stated that she thought her parents were hurting each other and that she was scared. *State's Ex*. 11. Later

in the call, the child said there was yelling and punching going on. *Id.* In his brief, McMillen concedes that a reasonable theory of guilt existed in this case, and that it was supported by the testimony given by both H.M. and McMillen. *Appellant's Br.* at 8. Therefore, his arguments are requests to reweigh the evidence and judge the credibility of the witnesses, which we cannot do. *Lehman,* 55 N.E.3d at 868.

[16] Based on the evidence presented at trial, we conclude that it was reasonable for the trial court to conclude that McMillen touched H.M. in a manner that was rude, angry, or insolent. The evidence showed that H.M. had a red mark on her cheek when the police arrived, and McMillen testified to hitting her with his elbow when he grabbed her cell phone from her. Although he claimed that it was not intentional and he was not angry, the trial court could reasonably infer that he was angry from his actions. The evidence showed that McMillen kicked the bathroom door, breaking it in half, in order to get access to H.M. inside the bathroom and to grab her phone from her. The evidence supported the trial court's finding that McMillen was guilty of domestic battery as a Level 5 felony.

[17] In order to convict McMillen of interference with the reporting of a crime as a Class A misdemeanor, the State was required to prove beyond a reasonable doubt that McMillen, with the intent to commit, conceal, or aid in the commission of a crime, knowingly or intentionally interfered with or prevented H.M. from using a 911 emergency telephone system. Ind. Code § 35-45-2-5. McMillen challenges the sufficiency of the evidence showing that he concealed

the commission of a crime and that he interfered with or prevented H.M. from dialing 911.

[18] The evidence showed that when McMillen was pulled over by the police, McMillen told the officer that he had H.M.'s phone because he took it from her "because she was trying to call [911]." *Tr. Vol. II* at 22. Although at trial, McMillen claimed that he only took H.M.'s phone from her because he was going to delete the voicemail, it was the trial court's responsibility, as trier of fact, to resolve conflicts in the evidence and to decide which witnesses to believe or disbelieve. *Moore*, 27 N.E.3d at 755-56. McMillen's contention that he was not concealing a crime is based on his claim that the State did not present sufficient evidence to support his conviction for Level 5 felony domestic battery. However, as we have determined that there was sufficient evidence from which the trier of fact could find that he committed Level 5 felony domestic battery, it was reasonable for the trial court to find that McMillen took the phone from H.M. in order to prevent her from dialing 911 and to conceal his commission of domestic battery. McMillen's arguments are a request for this court to reweigh the evidence, which we cannot do. *Lehman,* 55 N.E.3d at 868. We conclude that the State presented sufficient evidence to support McMillen's conviction for interference with the reporting of a crime.

[19] Affirmed.

Najam, J., and Brown, J., concur.