## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 30 2020, 9:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark K. Leeman
Leeman Law Office and
Cass County Public Defender
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney L. Staton
Caryn Nieman-Szyper
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Tyrone Burns,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

June 30, 2020

Court of Appeals Case No.
19A-CR-2943

Appeal from the
Cass Superior Court

The Honorable
James K. Muehlhausen, Judge

Trial Court Cause No.
09D01-1712-F6-496

**Kirsch, Judge.**

[1]  Tyrone Burns ("Burns") was convicted after a jury trial of receiving stolen auto parts as a Level 6 felony.[1]  He appeals and raises the following issue for our review:  whether the State presented sufficient evidence to support his conviction.

[2]  We affirm.

## Facts and Procedural History

[3]  Adnan Abdeh ("Abdeh") is a partner at South Chicago Auto Auction, an automobile auction house located in Harvey, Illinois.  *Tr. Vol. III* at 119.  In November 2017, Abdeh acquired a white Ford Mustang to sell on consignment.  *Id.* at 121-22.  Abdeh noticed the Mustang was missing on December 11, 2017.  *Id.*  The auction house reported the vehicle stolen on the following day.  *Id*. at 122-23.

[4]  On December 14, 2014, Cass County Sheriff's Department Deputy Brian Swartzell ("Deputy Swartzell") was dispatched to a single vehicle accident on County Road 50 East in Cass County, Indiana.  *Id.* at 101.  Upon arriving at the scene, he observed a white Ford Mustang turned over on its top in a yard between two homes.  *Id.*  A male stood up from the passenger side of the Mustang and said, "my brother is trapped."  *Id.*  Deputy Swartzell approached

---

[1] *See* Ind. Code § 35-43-4-2.5(c).

the vehicle and found Burns pinned inside with his feet pointing towards the driver's side and upper body on the passenger side. *Id.* at 101-03. Deputy Swartzell spoke briefly with Burns and his brother before paramedics arrived and airlifted Burns to Fort Wayne for treatment. *Id.* at 102, 108. When Deputy Swartzell attempted to get more information from the brother for the car crash report, he found that the brother had vanished from the scene. *Id.* at 109-11. None of the witnesses or paramedics could provide any information as to his whereabouts. *Id.*

[5] As part of the car crash investigation, Deputy Swartzell took pictures of the scene and ran the temporary license plate through the dispatch center. *Id*. at 107, 110. The search revealed that the license was registered to a different vehicle. *Id.* at 112. The vehicle's identification number ("VIN") identified the car involved in the accident to be the Mustang reported stolen from Harvey, Illinois. *Id.* at 111. At trial, Deputy Swartzell testified that he did not recall looking at the ignition for keys and that he did not notice indications of the vehicle being hot-wired. *Id.* at 113.

[6] From the pictures, Abdeh identified a marking and a custom sticker on the Mustang with an inventory number that the auction house places on all its vehicles. *Id.* at 123-24; *State's Exs.* 9, 10. Abdeh testified that the auction house only sells to professional dealers and does not rent vehicles. *Tr. Vol. III* at 125. The auction house does not put temporary license plates on its vehicles. *Id.* at 134.

[7] On December 21, 2017, the State charged Burns with receiving stolen auto parts as a Level 6 felony. *Appellant's App. Vol. II* at 12. While Burns was awaiting trial, he made a phone call from inside the jail to a person identified as F.V., whom he told that the State had "failed to get significant evidence." *State's Ex.* 13. He assured F.V. that the State "can't prove" that he knew the car was stolen, and the case was "beat already." *Id*. Burns explained that his "story" was going to be that he did not steal the car but "rented" it for someone else, and that he "had no idea if it was stolen." *Id*.

[8] A jury found Burns guilty as charged on October 15, 2019. *Tr. Vol. III* at 165. The trial court sentenced Burns to serve two years executed on November 14, 2019. *Id.* at 180; *Appellant's App. Vol. II* at 77. Burns now appeals his conviction.

## Discussion and Decision

[9] Burns argues that the State did not present sufficient evidence to support his conviction. When we review the sufficiency of evidence to support a conviction, we do not reweigh the evidence or assess the credibility of the witnesses. *Lehman v. State*, 55 N.E.3d 863, 868 (Ind. Ct. App. 2016), *trans. denied*. We consider only the evidence most favorable to the trial court's ruling and the reasonable inferences that can be drawn from that evidence. *Lock v. State,* 971 N.E.2d 71, 74 (Ind. 2012). We also consider conflicting evidence in the light most favorable to the trial court's ruling. *Oster v. State,* 992 N.E.2d 871, 875 (Ind. Ct. App. 2013), *trans. denied.* A conviction will be affirmed if there is

substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Wolf v. State*, 76 N.E.3d 911, 915 (Ind. Ct. App. 2017).

[10] Burns contends that the evidence presented at trial was insufficient to support his conviction of receiving stolen auto parts as a Level 6 felony. Specifically, he argues the evidence merely showed that he was driving a vehicle that had been stolen and not that he had knowledge that the vehicle was stolen.

[11] In order to convict Burns of Level 6 felony receiving stolen auto parts as charged, the State was required to prove that Burns knowingly or intentionally received the vehicle with the intent to permanently deprive the owner of any part of its value or use, that the vehicle was worth at least $750 and less than $50,000, and that Burns had prior unrelated convictions of theft, conversion, or receiving stolen property. Ind. Code § 35-43-4-2.5(c). Knowledge that property is stolen may be established by circumstantial evidence; however, knowledge of the stolen character of the property may not be inferred solely from the unexplained possession of recently stolen property. *Fortson v. State, 919 N.E.2d 1136, 1143-44 (Ind. 2010).* "Possession of recently stolen property when joined with attempts at concealment, evasive or false statements, or an unusual manner of acquisition may be sufficient evidence of knowledge that the property was stolen." *Barnett v. State*, 834 N.E.2d 169, 172 (Ind. Ct. App. 2005).

[12]     Here, the evidence most favorable to the verdict showed that Burns knew the vehicle was stolen. On December 14, 2017, the vehicle was found in an automobile accident with a false temporary license plate that was registered to another car. *Tr. Vol. III* at 101, 112. Abdeh testified at trial that no license plate was placed on the vehicle before it was stolen sometime between December 9 and December 11, 2017. *Id.* at 122-23, 134. Burns claimed that he had rented the vehicle for someone else, *State's Exs.* 12, 13; however, Abdeh testified that the auction house does not rent vehicles. *Tr. Vol. III* at 25. The jury as factfinder was not required to accept Burns's unsupported claim. *Thompson v. State*, 804 N.E.2d 1146, 1149 (Ind. 2004). It was reasonable for the jury to infer that Burns and his brother equipped the vehicle with a false temporary license plate to conceal the fact that it was stolen.

[13]     Additionally, Burn's brother left the scene before providing Deputy Swartzell with the basic information required for a routine car crash. *Tr. Vol. III* at 109. Deputy Swartzell testified that most people would provide their insurance information to avoid a citation and that they often have many questions about the accident and the car. *Id.* He found the brother's unexplained disappearance to be odd. *Id.* In *Myer v. State*, the Indiana Supreme Court stated that "[e]vidence of flight may be considered as circumstantial evidence of consciousness of guilt." 27 N.E.3d 1069, 1077 (Ind. 2015) (quoting *Brown v. State*, 563 N.E.2d 103, 107 (Ind. 1990)). While, standing alone, flight would be insufficient to establish knowledge, flight may be considered as circumstantial evidence of a guilty conscience, which combined with other circumstantial

evidence, may be sufficient to support a conviction. *Id.* Here, the jury could have reasonably inferred that Burns's brother fled the scene because he was afraid that Deputy Swartzell was about to discover that the vehicle was stolen during the car crash investigation.

[14] Furthermore, the jury could have reasonably inferred Burns's knowledge of the stolen characteristic of the vehicle from the recorded phone call from inside the jail while he was awaiting trial. Burns referred to his defense as a "story" that he "didn't steal" the vehicle but rather rented it for someone else. *State's Ex.* 13. He assured F.V. that the State could not prove that he had knowledge of the Mustang being stolen beyond a reasonable doubt without any witnesses. *Id.* The choice of the word "story," by common usage, indicated fabrication. There was also no evidence -- such as rental paperwork recovered from the vehicle -- to prove that the Mustang was a rental car. It was for the jury to decide whether to believe the "story" as the truth or not. *Thompson*, 804 N.E.2d at 1149. Based on the evidence presented by the State, the jury had sufficient basis to find that Burns knew that he was driving a stolen vehicle.

[15] Burns relies on *Fortson* for his contention that the evidence presented by the State was insufficient. In *Fortson*, the Indiana Supreme Court reversed a conviction of receiving stolen goods because the State had no evidence more than mere unexplained possession of the vehicle to prove that Fortson actually knew that the truck was stolen. 919 N.E.2d at 1143-44. When found in the stolen truck and approached by the officer, Fortson did not resist, flee, provide evasive answers or attempt to conceal the truck from officers. *Id.* Fortson's

conduct was consistent with an innocent person. *See Fortson*, 919 N.E.2d at 1144. However, these facts are distinguishable from the current case. Although Burns did not physically resist Deputy Swartzell, this does not mitigate the inference of guilt, because Burns was demobilized after the accident and was not in the same position as Forston where he had interactions with police officers. *Fortson* 919 N.E.2d at 1137; *Tr. Vol. III* at 102.

[16] Burns also claims that, like the appellant in *Fortson*, he did not live near where the theft occurred, *Appellant's Br.* at 13, that he had no affiliations with the auction house in Harvey, *id.*, that there was no indication that the vehicle was hotwired, *Tr. Vol. III* at 153, and that he had a working key fob to the vehicle at the time of the accident, *id.*. Burns's argument requests this court to reweigh evidence, which we cannot do. *Lehman*, 55 N.E.3d at 868. We, therefore, conclude that the State presented sufficient evidence for the jury to find that Burns had knowledge of the vehicle being stolen and to support his conviction for receiving stolen auto parts.

[17] Affirmed.

Najam, J., and Brown, J., concur.