## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 14 2020, 9:13 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

Barbara J. Simmons
Batesville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Larry D. Spivey Jr.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 14, 2020

Court of Appeals Case No.
19A-CR-1687

Appeal from the
Marion Superior Court

The Honorable
Barbara C. Crawford, Judge

Trial Court Cause No.
49G01-1712-MR-48920

**Kirsch, Judge.**

[2] Larry D. Spivey, Jr. ("Spivey") was convicted of murder[1] following a jury trial. Spivey now appeals his conviction raising the following restated issues:

> I. Whether the trial court abused its discretion in excluding Spivey's statement; and

> II. Whether the evidence presented at trial was sufficient to support his conviction for murder.

[3] We affirm.

## Facts and Procedural History

[4] Spivey lived with his parents at an apartment complex in Indianapolis, Indiana. *Tr. Vol. II* at 104, 146. Spivey's uncle, Albert Ford ("Ford"), had moved in with the Spivey family without paying rent before the shooting giving rise to this case. *Id.* at 154-55. Spivey's other uncle, Marvin Hutcherson ("Hutcherson"), and some extended family members also lived in the same complex but in different apartments. *Id.* at 146.

[5] On December 20, 2017, Spivey and Ford argued outside of the complex; both men had been drinking. *Id.* at 150, 154. Spivey's father, Larry Spivey, Sr. ("Larry Sr."), Hutcherson and Spivey's girlfriend were also present during the argument. *Id.* at 150-52. Ford had been swearing loudly and called Spivey's girlfriend names. *Id.* at 154-55. He then walked away, and Spivey shot him in

---

[1] *See* Ind. Code § 35-42-1-1(1).

the back. *Id.* at 151-52, 174. Hutcherson heard the single gunshot, turned around and saw Ford on the ground. *Id.* at 152. Larry Sr. walked over to Ford's body and said, "He's dead." *Id.* at 152-53, 157. Hutcherson decided to leave and got into his minivan. *Id.* at 153-54. Spivey accompanied him. *Id.*

[6] Multiple people called 911 after the shooting, and Indianapolis Metropolitan Police Department ("IMPD") Officer Eric Parrish ("Officer Parrish") was dispatched to the scene. *Id.* at 103-104, 113. When he arrived, he saw Ford was lying on the ground bleeding heavily from his mouth. *Id.* at 107. A neighbor was attempting to apply pressure to Ford's wound with a towel. *Id.* Officer Parrish checked for a pulse in Ford's wrist but did not detect one. *Id.* at 108. Roughly a minute later, the paramedics arrived and declared Ford dead. *Id.* at 109. Dawn Massey lives in the same complex in which the shooting happened. *Id.* at 237. She identified Spivey as the shooter. *Id.* at 238; *State's Ex.* 38.

[7] On December 22, 2017, Spivey was arrested in Chicago, Illinois. *Tr. Vol. II* at 241. Spivey was interviewed by IMPD Detective David Miller ("Detective Miller") at a police station in Chicago. *Id.* at 242. After being advised of his rights, Spivey waived his *Miranda* rights and made a videotaped statement to Detective Miller. *Id.* at 242-54; *State's Exs.* 39-41. At trial, the jury watched the video and was provided with a transcript of Spivey's statement. *Tr. Vol. II* at 242-48; *State's Exs.* 41-42. In his statement, Spivey first said that Ford had "tried to go for [his] gun" and "pulled it out . . . ." *State's Ex.* 42 at 95. Spivey claimed that the trigger was accidently pulled during the tussle. *Id.* Detective Miller challenged Spivey, saying that he knew this was not the truth. Spivey

admitted that he had fired the weapon as Ford was walking away, but claimed that he was only "aiming at the ground" to scare Ford. *Id.* at 101,104-05. Spivey said that he had "clouded judgment" from the alcohol, *Id.* at 119, and insisted repeatedly that he was not aiming at Ford when he fired the gun. *Id.* at 116-18.

[8] On December 22, 2017, the State charged Spivey with murder. *Appellant's Conf. App. Vol. II* at 22. A jury trial was held on June 3 and 4, 2019. *Id*. at 7-8. Forensic pathologist John Cavanaugh ("Cavanaugh") testified that Ford had a round symmetric circle where the bullet had entered his back. *Tr. Vol. II* at 177; *State's Ex.* 28. Cavanaugh stated that in most cases where the bullet ricocheted off something, the entry wound would be ragged, and the bullet would be deformed due to the altered trajectory. *Id.* at 178, 184. He also testified that ricochets are not common, and if Ford was standing upright, the ricocheted bullet would have more likely struck the lower part of Ford's body. *Id.* at 184. Forensic scientist Michael Putzek ("Putzek") testified that he would have expected to see flat spots on the sides of the bullet or a flattened nose if the bullet had ricocheted. *Id.* at 204, 214; *State's Ex.* 31, 34-36. Putzek stated he did not see any indication that the bullet in Ford's body had struck a hard surface. *Tr. Vol. II* at 214.

[9] At trial, Spivey attempted to present evidence about what he had said to Hutcherson right after the shooting. *Id*. at 157-62. The State objected on hearsay grounds, and Spivey made an offer of proof. The trial court permitted him to make a record of the testimony outside the presence of the jury. *Id*. at

157-58. In this offer of proof, Hutcherson said that immediately after Ford was shot, Larry Sr. walked to Ford's body on the sidewalk and said that he was dead. *Id.* at 158-59. Upon hearing those words, Spivey started crying and said that he "didn't mean to shoot [his] uncle" and was "shooting at the sidewalk." *Id.* at 160.

[10] After the offer of proof was made, the State argued that the hearsay should not be admitted because it was self-serving. *Id.* at 161. Spivey's counsel argued that Hutcherson's testimony should be admitted under the first three exceptions to the rule against hearsay in Indiana Rule of Evidence 803(1)-(3), which are the present sense impression exception, the exited utterance exception, and the then-existing mental, emotional, or physical condition exception. *Id.* at 160-61. The trial court ruled that the testimony was self-serving and sustained the State's objection. *Id.* at 162.

[11] The jury found Spivey guilty of murder. *Tr. Vol. III* at 53; *Appellant's Conf. App. Vol. II* at 16-17. The trial court sentenced Spivey to forty-five years in the Indiana Department of Correction. *Appellant's Conf. App. Vol. II* at 16-17. Spivey now appeals.

## Discussion and Decision

## I.    Exclusion of Evidence

[12] Spivey appeals the trial court's exclusion of Hutcherson's testimony concerning Spivey's out-of-court statement. Spivey contends that the testimony would fall within the first three of the exceptions to the rule against hearsay, and that the

trial court abused its discretion in excluding it from evidence. Ind. Evidence Rule 803. Furthermore, Spivey asserts that the exclusion deprived him of his constitutional right to present a defense to the *mens rea* element of the offense and that the error of excluding the testimony was not harmless beyond a reasonable doubt. *Appellant's Br.* at 10-11.

[13] A trial court has broad discretion in ruling on the admissibility of evidence, and we disturb those rulings only upon an abuse of that discretion. *Chambless v. State*, 119 N.E.3d 182, 188 (Ind. Ct. App. 2019), *trans. denied*. "An abuse [of discretion] occurs only where the trial court's decision is clearly against the logic and the effect of the facts and circumstances." *Id.* There is a strong presumption that the trial court properly exercised its discretion. *Id.* In conducting our review, we only consider evidence that favors the trial court's ruling and uncontested evidence that favors a defendant. *Id.*

[14] Hearsay is "a statement that: (1) is not made by the declarant while testifying at the trial or hearing; and (2) is offered in evidence to prove the truth of the matter asserted." Evid. R. 801(c). Hearsay is not admissible except as provided by law or by other court rules; however, a trial court may admit hearsay that qualifies as a present sense impression, an excited utterance, or a then-existing state of mind. *See* Evid. R. 802, 803(1)-(3). The focus of the analysis for all three exceptions is whether the statement was inherently reliable and therefore trustworthy. *See Gordon v. State*, 742 N.E.2d 376, 378 (Ind. Ct. App. 2001).

[15] At trial, Spivey attempted to introduce into evidence a statement that he made to Hutcherson shortly after the shooting. *Tr. Vol. II* at 158-60. When the State objected on hearsay grounds, the trial court excused the jury and permitted Spivey to make an offer of proof. *Id.* Hutcherson testified that as "soon as [the shooting] happened," Larry Sr. walked over to Ford and called out that "he's dead." *Id.* at 160. When Spivey heard that Ford was dead, he began to cry and said: "I didn't mean to shoot my uncle. I was shooting at the sidewalk." *Id.* The trial court ruled that Spivey's statement to Hutcherson was self-serving and excluded it from evidence. *Id.* at 162.

[16] Spivey concedes that the testimony he attempted to introduce at trial was hearsay. *Appellant's Br.* at 24. However, Spivey argues that the statement should have been admitted under the present sense impression exception. *Id.* at 25; Evid. R. 803(1). Hearsay testimony may be introduced as evidence under the present sense impression exception when three requirements are met: "(1) it must describe or explain an event or condition; (2) during or immediately after its occurrence; and (3) it must be based upon the declarant's perception of the event or condition." *Minor v. State*, 36 N.E.3d 1065, 1070 (Ind. Ct. App. 2015), *trans, denied*. The short time lapse leads to the assumption that the immediate response is unlikely to be deliberated and,therefore, provides reliability. *Mack v. State*, 23 N.E.3d 742, 755 (Ind. Ct. App. 2014), *trans. denied*.

[17] For the purpose of our review, we assume, but do not decide, that the three requirements for the present sense impression exception are met in Spivey's case, and that his statements: (1) described and explained the event of Ford

being shot; (2) were made immediately after the event; and (3) were based on Spivey's perception of the shooting. Spivey contends that meeting these three requirements conclusively makes his out-of-court statements reliable and, therefore, admissible. *Appellant's Br.* at 25-26. We disagree.

[18] The trial court maintains broad discretion on the admissibility of evidence. *Chambless*, 119 N.E.3d at 188. In *Sweeney v. State*, our Supreme Court made clear that a defendant who does not testify during trial "cannot introduce exculpatory statements made outside of court in order to enhance his credibility" because the statements are self-serving and generally untrustworthy. 704 N.E.2d 86, 110 (Ind. 1998). This is because the defendant is not subject to cross-examination if he does not testify at trial. *Canaan v. State*, 541 N.E.2d 894, 904 (Ind. 1989). In addition, we are unpersuaded by Spivey's contention that the truthfulness of the hearsay testimony should be left for the jury to decide. The purpose of this rule is to prevent litigants from enhancing their credibility by such method. *Marts v. State*, 432 N.E.2d 18, 24 (Ind. 1982). The trial court did not abuse its discretion in excluding Spivey's out-of-court statement despite the present sense impression exception to the rule against hearsay.

[19] Spivey also challenges the trial court's exclusion of the testimony based on the excited utterance exception. *Appellant's Br.* at 27-29; Evid. R. 803(2). In order for a statement to be admitted as an excited utterance: (1) a startling event must occur; (2) a statement must be made by a declarant while under the stress of excitement caused by the event; and (3) the statement must relate to the event.

*Williams v. State*, 782 N.E.2d 1039, 1045-46 (Ind. Ct. App. 2003), *trans. denied*. The admission of such statements depends on "whether the statement was inherently reliable . . . ." *Jenkins v. State*, 725 N.E.2d 66, 68 (Ind. 2000).

[20] Spivey focuses his argument on the short time lapse between the shocking event of the shooting and the utterance of the statements in order to establish the credibility of those statements. *Appellant's Br*. at 27-28. The trial court's analysis focused on the fact that such self-serving statements that are not subject to cross-examination are inherently unreliable and should not be used as a method to enhance the party's credibility. *Cannan*, 541 N.E.2d at 904. Spivey had made false statements regarding the incident during his interview at the police station, claiming that he was not the shooter at first and changing his story twice when challenged by Detective Miller. *Tr. Vol. II* at 242; *State's Ex.* 42 at 95, 101. The trial court did not abuse its discretion in finding Spivey's out-of-court statements unreliable, nor did it abuse its discretion in excluding self-serving hearsay as an excited utterance.

[21] The third exception to the rule against hearsay that Spivey raises is the state of mind exception. *Appellant's Br*. at 28-29. Evid. R. 803(3). Specifically, Spivey argues that the statements he sought to introduce pertained to his "then-existing state of mind (such as motive, design, intent or plan)" rather than "a statement of memory or belief to prove the fact remembered or believed." *Id.* The key to the analysis, like in the previous two exceptions, remains the reliability and trustworthiness of the statements. *See Gordon*, 742 N.E.2d at 378. Spivey relies

on the proposition in *Pelley v. State* that this exception permits "statements of any person to show his or her intent." 901 N.E.2d 494, 504 n.5 (Ind. 2009).

[22] In *Pelley*, the trial court admitted a statement by the defendant's father regarding restricting the defendant from attending his high school senior prom. *Id.* at 504. The Indiana Supreme Court held that the statements pertained to the defendant's intent in murdering his father and admitted the hearsay statements under the state of mind exception. *Id.* Here, however, the facts in *Pelley* are distinguishable. In *Pelley*, (1) there were eight witnesses who testified regarding the statements, (2) the victim of the murder who made the statements could no longer testify in court, and (3) the statements were not made by the defendant himself to exonerate himself. *See id.* Here, Spivey only had one witness, his uncle Hutcherson, testifying to his statement. *Tr. Vol. II.* at 158-60. Spivey's statements were self-serving. *Tr. Vol. II* at 158-160, 162. In addition, he could have testified in court himself but chose not to. Our review of the record gives us no reason to question the trial court's finding that Spivey's self-serving statements were not reliable. Therefore, we find no abuse of discretion in the trial court's rejection of Spivey's argument that the hearsay statement was admissible under the statement of mind exception to the hearsay rule.

[23] Because we have concluded that there was no abuse of discretion in the trial court's exclusion of Spivey's out-of-court, self-serving statements, we need not address the issue of the harm resulting from the exclusion of the evidence.

## II. Sufficiency of Evidence

Spivey also argues that the evidence presented at trial was insufficient to support his conviction for murder. When we review the sufficiency of evidence to support a conviction, we do not reweigh the evidence or assess the credibility of the witnesses. *Lehman v. State,* 55 N.E.3d 863, 868 (Ind. Ct. App. 2016), *trans. denied.* We consider only the evidence most favorable to the trial court's ruling and the reasonable inferences that can be drawn from that evidence. *Lock v. State,* 971 N.E.2d 71, 74 (Ind. 2012). We also consider conflicting evidence in the light most favorable to the trial court's ruling. *Oster v. State,* 992 N.E.2d 871, 875 (Ind. Ct. App. 2013), *trans. denied.* A conviction will be affirmed if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Wolf v. State*, 76 N.E.3d 911, 915 (Ind. Ct. App. 2017).

Spivey contends that the State presented insufficient evidence for his conviction because the evidence failed to show beyond a reasonable doubt that he knowingly or intentionally shot Ford. Spivey admitted during his interview with Detective Miller that he shot Ford on December 20, 2017. *State's Ex.* 42 at 101. However, Spivey claims he was aiming past Ford's body, and Ford walked into the path of the bullet when Spivey pulled the trigger. *State's Ex.* 42 at 112-13.

To convict Spivey of murder, the State was required to prove beyond a reasonable doubt that Spivey knowingly or intentionally killed another human

being. Ind. Code § 35-42-1-1(1). "Knowingly" requires that the defendant is aware of a high probability of what he is doing. Ind. Code § 35-41-2-2(b). The deliberate use of a deadly weapon in a manner that is likely to cause death or great bodily harm meets the standard for knowingly. *Harper v. State*, 523 N.E.2d 1389, 1391 (Ind. 1988); *see also Wilson v. State*, 697 N.E.2d 466, 476 (Ind. 1998) (holding that the deliberate use of a firearm in a manner that is likely to cause death or great bodily injury is sufficient to demonstrate a knowing intent).

[4] The evidence presented at trial clearly showed that the manner in which Spivey handled the firearm was likely to cause death. Spivey admitted that he pointed the gun in Ford's direction and pulled the trigger as Ford was walking away from him. *State's Ex.* 42 at 112-13, 119-20. In claiming that the evidence showed that he was aiming past Ford just to scare him, Spivey is asking us to reweigh the evidence. In addition, the evidence also showed that (1) Spivey had been drinking and arguing with Ford before the shooting, (2) Ford had been calling Spivey's girlfriend names, and (3) Spivey was resentful about Ford taking advantage of his parents by staying in their apartment without paying rent. *Tr. Vol. II* at 154-56. The jury had a reasonable basis to infer that Spivey had a motive to kill Ford, and that he used a deadly weapon in a manner likely to cause serious bodily harm.

[5] The testimony of the forensic pathologist and forensic scientist who testified also provided support for Spivey's conviction. The two experts testified that the shape of Ford's wound and the condition of the bullet were not consistent with

a ricochet. *Tr. Vol. II* at 184, 204. It is not our role to reweigh the evidence or assess the credibility of witness. *Lehman*, 55 N.E.3d at 868. We conclude that the State presented sufficient evidence for the jury to find that Spivey had knowingly or intentionally killed Ford and his conviction of murder was supported by the evidence.

[6] Affirmed.

Najam, J., and Brown, J., concur.